UTICA,
Aug. 1826.

Ward
v.
Green.

WARD & WARD *against* GREEN.

ON error from the C. P. of *New-York.* The action below was assumpsit by *Green* against the *Wards.* The declaration contained the common money counts.

On the trial, it appeared, that the defendants were, on the 27th of *June,* 1825, the owners of the ship *Morgiana, James Allen,* master. The plaintiff below gave in evidence the following receipt, signed by the master : " Receiv'd of *Benjamin Green,* (the plaintiff below) two hundred and seventy Spanish dollars, deliverable at *New-York,* dangers of the seas excepted, unto the said *Benjamin Green,* one ½ per cent primage. *New-Orleans,* the 27th of *June,* 1825." On this testimony the plaintiff below rested.

The defendants below then gave in evidence the freight list of the ship, dated *June 28th,* 1825, containing various articles, in the name of various shippers, on various consignments, which did not include the dollars. Also a receipt signed by one of the defendants, *Henry Ward,* of even date with the above receipt, acknowledging the receipt of $15 of the plaintiff, as his, the plaintiff's passage money to *New-York* in the steerage. They farther proved that the plaintiff below was a passenger in the ship to *New-York ;* and that *Henry Ward* sailed as supercargo. And it was admitted by the parties, that the contract to transport the specie, was made with the master without the knowledge of *Henry Ward,* the part owner and supercargo ; and that he knew nothing of the contract till after the master alleged that the specie had been stolen.

The court below charged that the master of a vessel is, when abroad, generally the agent of the owners, and is, from his station in the vessel, empowered to attend to the shipment of the cargo, and make contracts in relation to the knowledge of the owners, and which were not put in the freight list ; the money being stolen on the voyage ; *held,* that the owners were liable.

The master of a vessel, when abroad, is the agent of the owners; and has power to make contracts in relation to freight, which are binding upon the owners. When an owner is on board, and exclusively attending to the shipment of the cargo, he is not bound by the master's contract. But, to relieve himself from liability, he must shew the fact that he was exclusively attending to the shipment of the cargo. And he must shew the same thing, though he was on board as supercargo.

It is not enough that one of the owners is on board as supercargo ; and where this was the case, and the master of a general ship receipted dollars for transportation, without

What shall be deemed a general ship.

the freight, which are binding upon the owners. That when an owner is on board, and exclusively attending to the shipment of the cargo abroad, and to making contracts in relation to the freight, the owners are not bound by any contracts of the master in relation to the freight. But it is incumbent on the owner to shew, in order not to be affected by the engagements of the master, that he was thus exclusively attending to the shipments and the making of contracts. And that, although by an arrangement between one of the defendants and his co-partner, the other defendant, the latter was made the supercargo of the vessel, yet, being at the same time owner, the same proof that he was exclusively attending to the shipment, and the making of contracts, was necessary. Otherwise, the contracts of the master are binding. Under this direction, the jury found for the plaintiff below; and the defendants below excepted to the charge, and prosecuted their writ of error, on the judgment and a bill of exceptions.

*J. L. Graham*, for the plaintiffs in error. The owner being present at the time of the theft, the carrier is not liable. (2 *Com. on Cont.* 330.) To make the owner liable, the property should have been mentioned in the freight list. That the whole was a matter between the bailor and the master, is evident from the payment of primage, which is defined to be a duty at the water side, payable to the master and mariners. (*Jac. L. Dict. Primage.*) The payment of passage money by *Green* to *Henry Ward*, one of the defendants below, shews that the former knew in what character the latter was acting. The defendants below were not bound to shew that the supercargo and part owner attended exclusively to the shipments. *Walter* v. *Brower*, (11 *Mass. Rep.* 99,) is in point for the plaintiffs in error. (*See also Boucher* v. *Lawson, Rep. Temp. Hardw.* 83. *id.* 183. *Poth. Mar. Cont. Cushing's ed.* 27.) The owners can only be chargeable on a bill of lading, to which the receipt was not equivalent. It does not mention the name of the vessel. *Allen* did not sign as master, and no freight is specified.

*P. W. Radcliff*, contra.   Any objection not taken at the trial cannot be raised here.   (15 *John.* 338.)   The owner of the property being present, the rate of primage, and receipt not amounting to a bill of lading, are out of the question.   So, whether the verdict be against evidence.   The argument is confined to the point in the bill of exceptions.   (14 *John.* 304.   2 *Caines'*, 168.   8 *John.* 495.)   Of course, the court have nothing to do with the objection, that the property was not mentioned in the freight list.

The only question really presented by the bill of exceptions, is, whether the master's contract, under the circumstances of the case, was obligatory upon the owners.   He may bind his owners for the carriage of goods within the ship's usual employment.   (*Abb. on Shipp. pt.* 2, *ch.* 2, *s.* 2, 3, 4.)   The owner was on board as supercargo only; having nothing to do with the employment of the ship or procuring of freight.   She was a general ship for the carriage of merchandize; not sent out for a special purpose, or intended exclusively, or at all, for the owner's use.   This appears from the freight list.   *King* v. *Lenox*, (19 *John.* 235,) shews the true rule and its exceptions.   So also *Walter* v. *Brewer*, (11 *Mass. Rep.* 99,) cited on the other side.   The court below laid down the law correctly.

*Curia, per* SAVAGE, Ch. Justice.   *Abbott on Shipping*, in treating of the liability of the owners, on the contracts of the master, states that the owners are bound to the performance of every lawful contract made by the master, relative to the usual employment of the ship.   The master is the confidential agent of the owners at large, and is entrusted with the conduct and management of the ship.   It often happens that no contract can be made with the owners personally, as where the ship is in a place distinct from their residence.   But even when the ship is at the place of their residence, and is intended to be employed as a general ship, it rarely happens that the owners interfere with the receipt of the cargo; and without doubt they are legally bound to perform every contract made by the

master relative to the usual employment of such a ship. (*Abbott, part* 2, *ch.* 2, *s.* 2, 3, 4.)

A general ship is defined to be one in which the master or owners engage separately with a number of persons, unconnected with each other, to convey their respective goods to the place of the ship's destination.

There can be no doubt that, in this case, the ship was a general one ; and the owners are liable for the performance of the master's contract, unless they are discharged by reason of one of the owners being present at *New-Orleans*, and acting as supercargo.

The case of *Boucher* v. *Lawson*, (*Rep. Temp. Hardw.* 83, 183, *Abb. on Sh.* 119, *S. C.*,) was an action against the owner, to recover the value of *Portugal* coin, delivered to the master at *Lisbon*, to be conveyed to *London ;* and of which, by the usage of that particular trade, the master was to receive the freight to his own use ; and which he had embezzled. The court held, that if it had appeared that the ship was employed in carrying goods for hire, the owner would have been answerable for the loss. But as that did not appear, and possibly the ship might have been sent for a special purpose, the master could not charge the owners, by taking in goods contrary to his duty.

In the case of *King* v. *Lenox*, (19 *John.* 236,) the general liability of the owner is asserted as I have before stated it ; but in that case, the owner was held not responsible, because the ship was freighted wholly by him. The master, therefore, had no authority to receive goods on freight. The contract was, consequently, deemed to be made with the master in his individual capacity, and not as agent of the owners. In the case of *Walter* v. *Brewer*, (11 *Mass. Rep.* 99,) the owner went in the ship, intending to freight her himself. The ship was not advertised for freight, nor did she bring any from *Montevideo ;* but the cargo belonged to the owner, except the bales of skins which the master received from the plaintiff, and stowed away secretly. The judge instructed the jury that the owners were generally liable on the contracts of

the masters abroad on the voyage ; but as the owner had
gone in the ship to procure a cargo ; as the ship was not
put up for freight ; and as the defendant was not consulted,
but the goods were taken on board without his knowledge,
he was not liable.    But had the owner known of the ship-
ment of the goods before he left *Montevideo*, he would
have been accountable.

On a motion for a new trial, the court concurred gener-
ally in the doctrine pronounced at the trial ; that the own-
er is not liable for goods clandestinely taken on board by
the master, the former being present, and having the man-
agement of the voyage himself, leaving nothing to the
master but the care of sailing and directing the ship, espe-
cially when the ship is not a freighting ship.    But even
under such circumstances, the court declared they would
hold the owner liable, if he knew the goods were receiv-
ed on board upon freight.    And the judge delivering the
opinion of the court, concurs with the doctrine of *King* v.
*Lenox*, that in such a case it is reasonable that the owner
of goods who avails himself of the master's privilege, should
be holden to trust to his individual responsibility.

In neither of these cases was the ship a general one.
And *Abbott* thinks it makes no difference that the goods
are taken as part of the master's privilege, because it is
immaterial whether he is paid by a privilege or by wages.

The case under consideration is not like either of those
cited.    Here the ship was a general one.    She was freight-
ed by sundry persons.    The cargo did not belong to the
owner.    The master, therefore, had authority to receive
goods on freight, unless he was prohibited by the owner's
presence.

I can see no error in the opinion of the judge who de-
livered the charge in the court below.    He stated that the
master of a vessel, when abroad, is the agent of the owners,
and has power to make contracts in relation to freight,
which are binding upon the owners.    That when an own-
er is on board, and exclusively attending to the shipment
of the cargo, he is not bound by the master's contract.
But to relieve himself from liability, he must shew the

UTICA,
Aug. 1826.

Ward
v.
Green.

fact that he was exclusively attending to the shipment of the cargo. This doctrine seems to me to be supported by the authorities referred to, and is reasonable in itself. If the jury did not correctly apply the law to the facts of the case, the remedy is not by bill of exceptions and writ of error.

I am of opinion that the judgment of the court below should be affirmed.

Judgment affirmed.