## STEELE *vs.* McTYER'S ADM'R.

[CASE AGAINST COMMON CARRIERS FOR NEGLIGENCE.]

1. *Admissibility of defendant's declarations.*—Conceding that, in an action against the owners of a flat-boat, as common carriers, for negligence, the defendants may prove their instructions to the master of the boat not to take any freight until he reached a point on the river below that at which plaintiff's cotton was shipped; yet, they cannot be permitted to prove, that the reason assigned by them for such instructions, in the same conversation, was, that a full cargo for the boat had been already engaged at the points below.

2. *What constitutes common carriers.*—If the owners of a flat-boat hold themselves out to the public generally, though but for a single trip, and for part of a cargo only, as ready and willing to carry any cotton that may be shipped on their boat, they are liable as common carriers to persons who availed themselves of their services ; but, if they do not thus constitute themselves the servants of the public, only proposing to carry the cotton of particular persons with whom they have contracted for a full cargo, they cannot be held liable as common carriers to a third person, with whom the master of the boat, in violation of their instructions, makes a contract for freight.

3. *Relevancy of evidence to prove contract of common carrier.*—The fact that the owners of a flat-boat were, in former years, engaged as common carriers in the transportation of cotton by flat-boats on the same river, is admissible but not conclusive evidence to show that they were acting in the same capacity in the particular contract in controversy.

4. *Liability of common carrier.*—A common carrier is responsible for a loss caused by the wreck of his flat-boat from running against a concealed log or snag in the river. (STONE, J., *dissenting.*)

5. *Admissibility of custom to affect bill of lading.*—Parol evidence is admissible, to show that, by a custom existing on a particular river, flat-boatmen were not responsible for a loss caused by dangers of the river, although the bill of lading contained no such exception.

6. *Requisites of custom.*—Whenever there is conflicting evidence as to the existence of a particular custom, the jury should be instructed, that a custom, to be valid and binding, must be uniform, and so generally known and acquiesced in, and so well established, that the parties must be presumed to have contracted in reference to it.

APPEAL from the Circuit Court of Perry.

Tried before the Hon. JOHN GILL SHORTER.

THIS action was brought by William McTyer, against John C. Steele, William Hendrix, and William S. Hanna, as common carriers, to recover damages for the loss of fifteen bales of cotton, which were shipped by plaintiff on

board of a flat-boat belonging to defendants, consigned to McDowell, Withers & Co. at Mobile. In consequence of the rulings of the court on the first trial, the plaintiff was compelled to take a nonsuit; which was set aside by this court, at its January term, 1855, and the cause remanded. See the case reported in 26 Ala. 487.

One count of the declaration alleged, that the contract for the transportation of plaintiff's cotton was made with said John C. Steele, acting for and on behalf of himself and the other defendants; and set out the receipt, or bill of lading, which was signed by said Steele, and a copy of which may be seen in the former report of the case. After the remandment of the cause, the defendants Hendrix and Hanna pleaded *non est factum* to this bill of lading; to which plea the court sustained a demurrer, and refused to visit the demurrer on the declaration. To these rulings of the court exceptions were reserved.

On the last trial, as appears from the bill of exceptions reserved by the defendants, the plaintiff introduced evidence tending to show that the flat-boat was built near Centreville in Bibb county, under a contract with said Steele, and was paid for by him and the other defendants; that it was brought down the river, when finished, by said Steele, who acted as the master or pilot; that the plaintiff's cotton was shipped on board of said boat in Bibb county, where other cotton belonging to one Massey was also put on board; that the boat proceeded down the river, and took on board cotton belonging to N. Lockett and J. Nave, at their respective landings on the river in Perry county; and that it was afterwards run on a log or snag in the river, in Perry county, and sunk. The evidence in relation to the loss of the boat is thus stated in the bill of exceptions: "The plaintiff proved, that said boat struck the log about 5 o'clock in the evening of the day; that there was room enough on either side of the log for boats to pass; that several witnesses had, for many years, known that there was a log in the river at or about that place; that two pilots, who were introduced as witnesses by him, and who had run on said river for many years, knew of a log at that point in the river; that one Belcher,

a pilot, had taken down a float-boat safely at about 11 o'clock of that day; that the river was then falling, and, as he passed the place where defendants' boat struck the log, he saw several feet of the top of the log, but could not see the body of it on account of the depth of the water; that Henry Johns, an experienced pilot, took another boat down the river, and passed defendants' boat on the log while they were trying to save the cotton; that said Johns had known the log for years, and a considerable portion of it was visible above the water when he passed; and that three other boats passed down the river safely, on the day after the disaster to defendants' boat, passing on the east side of the log. The witnesses stated, that the root of the log caused a ripple in the water, by which its position could be known; and that most of the log was covered by the water. The defendants proved, that the place where said boat was wrecked was one of very dangerous and difficult navigation, and was generally known to be so by persons acquainted with said river; that said Steele was a good and experienced pilot, and O'Brien a good bow-oarsman, and both had been engaged in flat-boating cotton down the Cahaba for many years; that said boat had on board twelve good and efficient hands,—eight or nine being about the usual number for managing a boat of that size. O'Brien, one of the oarsmen on said boat, testified, that the boat was well and skillfully managed, and was wrecked on said log by what he called inevitable accident; that the water ran over the log, and concealed it where it ran over it; that he did not see the log until the boat struck it, and did not know whether Steele saw it, or knew where it was, or even that there was a log in that place; that he saw the boiling of the water, but it did not show how the log lay; that the boiling was at or over the root of the log, some distance from where the boat struck it; that immediately after passing a dangerous place just above said log, an officer on the boat cried out, 'All safe;' that Steele then gave way on his oar, and immediately afterwards the boat swung around, and struck the log."

Evidence was introduced by the defendants, tending to

show that flat-boats, similar to theirs, never carried more than one load of cotton or other produce down the river to Mobile; that after reaching Mobile, they were sold for lumber, or cut up and sold for fuel; "that it was usual for persons carrying cotton down said river on flat-boats to engage the same before starting, and to take no other cotton, unless they were hailed as they went down, and requested to receive cotton from the banks of the river; that unless the cotton was so engaged, or the manager or owner of the boat was requested to take it, no cotton was ever taken on board such boats; that the captain or manager of the boat, when hailed, took cotton from the banks, and receipted for it; " that defendant Hendrix had engaged to take down Lockett's cotton on said boat, but the cotton of Nave and plaintiff was taken on board without any prior contract; that Hendrix and Hanna were the owners of said boat, and Steele was only their pilot. The defendants proved by one Marsh, "that when Steele was going up to Bibb county for the boat, Hendrix told him not to take any cotton until he got down to Lockett's landing; and then proposed to prove that, in the same conversation, Hendrix stated to Steele that they had a load of cotton engaged at said landing and below it on the river, and that this was the reason why he wished him not to take on any above." The court excluded this evidence, on the plaintiff's objection, and the defendant excepted.

The defendants offered to prove, that said W. S. Hanna, on the day after the accident to the boat, on being informed of the accident, engaged a steamboat, to go up to the wreck, and assist in saving the cotton; and offered to pay the steamboat $2 per bale for saving and freighting the cotton to Mobile. The court excluded this evidence, on the plaintiff's objection, "and would not permit the defendants to prove what price said Hanna had offered the steamboat for her services; " and the defendants excepted.

The defendants introduced several witnesses, who testified to the existence of a custom on the Cahaba river, exempting flat-boats from liability for losses which occur

red from dangers of the river; that this exception was sometimes expressed in the bill of lading, and sometimes omitted,—the liability of the carrier being in each case the same. On the other hand, the plaintiff introduced several witnesses, who testified that, though they had been engaged in freighting cotton down said river many years, they had never heard of the existence of such a custom, or of any other custom exempting flat-boats from common-law liabilities as carriers. The bill of lading in this case contained no express exception.

The court charged the jury as follows:

"That if Hendrix and Hanna were partners, engaged in the business of transporting cotton on flat-boats down the Cahaba and Alabama rivers to Mobile for hire, and had purchased the boat in question for that purpose, and had constituted Steele their agent to receive the boat and navigate it to Mobile as captain; and that said Steele, in that capacity, executed to plaintiff the bill of lading described in the declaration, and received the cotton therein mentioned on board of the boat, to be transported to Mobile as therein stated,—then Hendrix and Hanna were bound by the contract so made by Steele; and if the cotton was not delivered in Mobile, but was lost by the wreck of the boat on the river, under the circumstances detailed by the witnesses, they were liable to plaintiff for the same; and that there was not before the jury any sufficient evidence to establish a custom which exempted them from such liability."

To this charge said Hendrix and Hanna excepted, and requested the court to charge the jury:

"1. That if they believed from the evidence that the boat was well managed up to the time when the cry was made that all was safe, and that it was not then in the power of human agency to avoid the log on which the boat was wrecked, and that said log was concealed, and not generally known to pilots accustomed to run the river, and that there was no evidence to show that said log was known to the officers or hands of the boat,—then the plaintiff could not recover.

"2. That the plaintiff could not recover, unless the jury

were satisfied that there was negligence in the management of said boat, which caused it to run on said log and become wrecked.

"3. That if they believed from the evidence that the boat, on account of the wrecking of which this action was brought, was a flat-boat, constructed and procured by Hendrix and Hanna for the purpose of being carried to Mobile for a single trip, and had never been used before; that the cotton which Hendrix and Hanna, the owners, intended to transport on said boat, was engaged beforehand by them from the owners thereof; and that there was no evidence to show that the managers of said boat were bound to take any cotton that might be offered to them on their trip down the river, on tender of the payment of freight,—then the defendants were not common carriers, and the law would not hold them responsible as such.

"4. That the defendants, under the evidence introduced before the jury, were not common carriers in law.

"5. That if the jury believed from the evidence that Hendrix and Hanna were the owners of the boat; that Steele was instructed to go up the river, and bring down said boat, but not to take any cotton on board until he got down to Lockett's gin-house on the river; that said Steele did go up for said boat, and on the way down the river, before reaching said Lockett's gin-house, took plaintiff's cotton on board of the boat, and the same was afterwards lost,—then said Hendrix and Hanna were not liable therefor.

"6. That if Hendrix and Hanna were not engaged in the business of common carriers in the county of Bibb at the time plaintiff's cotton was taken on their boat, and had engaged a load of cotton for it in the county of Perry; and if said Steele was merely the captain of the boat, and contracted for and received plaintiff's cotton on the boat in Bibb county, contrary to the instructions of Hendrix and Hanna,—then said Hendrix and Hanna are not responsible, unless they adopted the contract with full knowledge thereof.

"7. That if there was no proof of a custom, as to the

authority of a pilot or master to give receipts binding the owners of the boats on the Cahaba river, and the defendants Hendrix and Hanna had never allowed Steele to give receipts for them, but always either gave receipts themselves, or sent an agent other than Steele with their boats to give receipts,—then said Hendrix and Hanna would not be bound by the receipt given in this case by Steele.

"8. That if Steele was simply the pilot of the boat, and Hendrix and Hanna sent him up the river for the boat, with instructions not to take any cotton on board until he had brought the boat down to Lockett's; and if he was authorized only to take on board the cotton which Hendrix and Hanna had engaged for the boat, but, in opposition to the instructions of Hendrix and Hanna, contracted for plaintiff's cotton, and received it on the boat, without the knowledge or consent of Hendrix and Hanna; and if it did not appear that they adopted the act,—then they are not liable for the loss or injury to the cotton."

The court refused each of these charges, and said Hendrix and Hanna excepted; and they now assign as error all the rulings of the court, as above stated, to which they reserved exceptions.

BROOKS & GARROTT, for the appellants.

WM. M. BYRD, and J. R. JOHN, contra.

WALKER, J.—In the argument of appellants' counsel no defect in the declaration is pointed out, and none has been detected by us. We decide, therefore, that there was no error in the failure to visit upon the declaration the demurrer to the defendants' plea.

That one of the defendants, after the disaster to the boat, offered, under the circumstances stated, to pay two dollars per bale for the services of a steamboat in saving and freighting the cotton to Mobile, was not evidence, for the exclusion of which the appellants can complain, and there was no error in rejecting such evidence.

The court permitted the defendants to prove, that instruc-

tions were given by one of the owners, to the master of the
boat, that he should not take on board any cotton until he
got to Lockett's landing, a point below that at which the
plaintiff's cotton was received; and it was then proposed to
show, that, in the same conversation, the master was in-
formed, that a load was engaged at Lockett's landing,
and at points below on the river, and that that was the
reason why it was desired he should receive no ·cotton
above Lockett's landing.    This latter proof the court
properly rejected; for, conceding that it was competent to
prove the previous engagement of a load at and below
Lockett's landing, it was· not permissible to make the
proof by the introduction of the defendants' declarations.
If the defendants had a right to give in evidence the in-
structions to the master of·the boat, it was not permissi-
ble for them to make that a pretext by which to obtain
the benefit of declarations as to facts made at the same
time.

   The American decisions are conflicting as to what con-
stitutes a common carrier.    We have examined those, as
well as many English cases; and, without reviewing
them, we announce our conclusions.  If the appellants
built or procured a flat-boat, with which to carry cotton
down the Cahaba river, and thence to Mobile, though
only for a single trip, and held themselves out as ready
and willing to carry cotton on their boat for the people
generally who wished to send their cotton to Mobile, then
they would be common carriers, and those who placed
cotton upon the boat could not be affected by any private
instructions, which might have been given to the master
of the boat, as to the point on the river above which he
was to take on no cotton.   On the contrary, if the appel-
lants did not hold themselves out as ready and willing to
carry cotton for the public generally, to the extent of a
proper load for the boat; or, in other words, did not con-
stitute themselves the servants of the public in that busi-
ness, but only proposed to take the cotton of some partic-
ular persons, with whom engagements were made, they
were not common carriers.  If the appellants, having
engaged a part of the loading for the boat, held themselves

out as ready to carry for any person or persons to the extent of the remaining capacity of the boat, then they would be liable as common carriers to such persons as availed themselves of such offer of their services to the public generally as carriers. These questions, under the proof, should have been left to the jury, and the court erred in not giving the third and sixth charges asked. We cite the authorities bearing on this branch of the case: 1 Parsons on Contracts, 639; Dwight v. Brewster, 1 Pick. 50; Robinson v. Dunmore, 3 B. & P. 417; Edwards on Bailments, 425–432; Satterlee v. Groat, 1 Wend. 272; Jackson's case, 1 Haywood, 14; 2 Kent's Com. 598–599; Gisbourn v. Hurst, 1 Salkeld, 249; Ward v. Green, 6 Cow. 173; Johnson v. Midland Railway Co., 4 Ex. 367; Campbell v. Morse, Harper's Law R. 468; Samms v. Stewart & McKibben, 20 Ohio, 69; Notes to Coggs v. Bernard, 1 Smith's L. C. 82; Fish v. Chapman, 2 Kelly, 349; Lane v. Cotten, 12 Mod. 472; Angell on Carriers, 71–76.

The evidence that the defendants had been, in former years, engaged for the public generally in the transportation of cotton to Mobile on flat-boats, would be proper for the consideration of the jury in determining the question, whether they were common carriers; but it would not necessarily be conclusive. It might be that, notwithstanding they had previously acted as common carriers, they had abandoned the service of the public, and were simply engaged in the execution of special contracts. To constitute them common carriers, they must be engaged in the service of the public.

The wreck of the boat, upon the log described in the evidence, would not be a loss from the "act of God." Certainly it may have been, in some sense, by the act of God that the tree was thrown from its erect position, and became fixed at the place where the boat struck it. But then it was not the act of God which caused the boat to impinge upon that log. The act of God was, at most, but a remote agency in the production of the loss; while the human act of directing the boat against the log was the immediate and direct cause of the loss. This court said,

nearly twenty-five years ago: " The acts of God, or the inevitable accidents, which constitute a legal excuse, must be the immediate, not the remote cause of the loss." Sprowl v. Keller, 4 Stewart & Porter, 382; Jones v. Pitcher, 3 Stewart & Porter, 135. By the principle thus enunciated by this court, the writer of this opinion is willing to abide. To throw the *onus* of proving negligence upon the owner of the freight, in every case where loss might be occasioned by the striking of a hidden obstruction placed by the hand of nature, would emasculate the rule which governs the liability of common carriers, and practically abrogate the distinction between the act of God and dangers of the river. I am aware that, in some of the American courts, a disposition has been manifested to soften the stern rule of liability, visited upon common carriers; but I find it sanctioned by the authority of the common law, long declared a necessity of commerce, and founded in sound and wise policy, and think it should be maintained in its integrity, without any yielding to the hardships of particular cases.—Coggs v. Bernard, 1 Smith's L. Cases, 82, and notes of Hare & Wallace; 1 Parsons on Contracts, 634; Edwards on Bailments, 454; McArthur v. Sears, 21 Wend. 190; Angell on Carriers, § 154; Gordon & Walker v. Buchanan & Porterfield, 5 Yerger, 71–83; Fish v. Chapman & Ross, 2 Kelly, 349; 2 Kent's Com. 602–603; Abbot on Shipping, 382; Turney v. Wilson, 7 Yerger, 340.

We decline to overrule the decision of this court in Ezell v. Miller, 6 Porter, 307.—See the decision, at this term, in the case of Hibler v. McCarty, where a similar question is considered. It was, therefore, competent for the defendants to establish the custom, which they claim to have existed. There was some proof conducing to show such custom; and even though it may have seemed to the court to have been totally insufficient, or counterbalanced by other testimony, it should have been left to the jury. The jury should, however, in all such cases, be carefully instructed, that to constitute a good custom, it is requisite that it should have been uniform, and so generally known and acquiesced in, and so well

established, that the parties must be presumed to have contracted in reference to them.—Partridge v. Forsyth, 29 Ala. 202; Ala. & Tenn. Rivers Railroad Co. v. Kidd, 29 Ala. 226; Price v. White, 9 Ala. 563; Barlow v. Lambert, 28 Ala. 704.

What we have said settles the questions of law arising in the case, and will be sufficient to guide the court below in a future trial.

The judgment of the court below is reversed, and the cause remanded.

STONE, J.—In the case of the Coosa River Steamboat Company v. Barclay & Henderson, in manuscript, I expressed my views on the proper construction of the phrase "act of God," as applicable to the liability of common carriers. C. J. Rice and myself did not concur on that question, and the result was that that case was affirmed by a divided court. Judge Walker did not sit in that case.

In the present case, Judge Walker and myself are alone competent to sit. He now expresses a concurrence with Chief Justice Rice on this question, and it follows that theirs is now the expressed opinion of the majority of the court.

Although I have not changed my opinion, I now feel it my duty to permit their opinion of the law to become the judgment in this cause.

RICE, C. J., not sitting.