### ERIE RAILWAY CO. v. ALICE A. KOHLER.

**Act of God as Defense Supplants Delay in Shipment in Action for Negligence for Goods Lost in Flood.**

Act of God as a defense exonerates a carrier from negligence in delaying shipment, being the proximate cause; hence in case of goods in transit damaged by a flood, the carrier is not deprived of the defense of vis major by reason of the fact that but for the carrier's own negligence in permitting the shipment to be delayed, it would have been delivered to the consignee before the occurrence of the flood. Daniels v. Ballentine, 23 Ohio St. 53, followed, and Cincinnati, H. & D. Ry. v. Myers & Patty Co. 40 O. A. & C. 122, denied.

ERROR.

*Cushing, Siddall & Lamb,* for plaintiff in error.
*Frank F. Gentsch,* for defendant in error.

**GRANT, J.**

The parties will be designated here as they were below, which is in the reverse order of the caption.

The facts material to the conclusion we have reached are not in dispute.

The plaintiff delivered a lot of household goods to the defendant company—a common carrier—at Ashland, Ohio, on March 20, 1913, for shipment over its road to Cleveland. The bill of lading was in the customary form—what we suppose to be standard with carriers—and stipulated, among other things, that the company should not be held to a liability for loss or damage "caused by the act of God." The goods were loaded at Ashland on the afternoon of the same day they were received, but owing to some defect in the car to which they were assigned the lading was changed to another car, which did not leave the initial point of shipment till the second day afterwards, and did not reach Cleveland until March 23. For these delays the plaintiff was in no way responsible.

In Cleveland the car was stopped at the defendant's so-

called Literary street yard, a place where inbound freight is separated and distributed for routing to the particular team tracks where the owner is expected to receive and take away his belongings. The latter location in this case was nearby the defendant's Scranton avenue freight station, and there the car was placed on the 24th day of March, but after the close of business hours, and the plaintiff was notified. She received this notice the next morning. The rain which culminated in the unprecedented flood of March, 1913, in Ohio, began to fall on the afternoon, or in the evening, of March 23d, which was Sunday. By the afternoon of the next day it had reached formidable proportions, in consequence of which when the plaintiff was informed of the arrival in Cleveland of her property, the Cuyahoga river was already at flood stage, bank-full or more, and was still rising with alarming rapidity, so that even at that time it was impracticable for her seasonably to remove it from the car. This inability continued and increased during the further heavy rainfall occurring on the two days next succeeding. The consequence was she was unable to come at her goods until April 3d, by which time they were materially injured through, and physically by, immediate reason of the flood conditions thus narrated.

She accordingly sued the defendant company in this action for the damage then and thus accruing, as she said, imputing it to the company's negligence in delaying her shipment until the flood overtook it and immediately caused the injury.

The defendant pleaded by answer, among other things, the intervention of the act of God, evidenced by the rain in question, and claimed exemption from liability on that account, in accordance with the reservation in the bill of lading and by the law of the land in that respect. We are not at present concerned with any other matter of defense or mitigation alleged in the answer.

Upon issue joined as to this plea, the cause was put upon its trial in the court below, to a jury.

There was a verdict for the plaintiff, upon which the judgment brought here for review was entered, after a motion for a new trial had been made and denied.

We shall brush aside the matters of inducement leading to

Erie Ry. v. Kohler.

the presentation of the main and decisive question in the case, and come at once to a consideration of that controlling issue, and upon which we purpose to rest our conclusion.   We shall assume—for the fact unquestionably is so—that but for the delays of the car at Ashland, at Cleveland, and in transit, the lading could have been delivered to the plaintiff at the point of destination, seasonably for safe removal before the flood overtook it.

That the flood of March, 1913, in Ohio was of such magnitude and suddenness as to be an act of God, within the meaning of those words on the back of the shipping bill, is not a matter of dispute.   It was a manifestation of nature so extraordinary, and so violent in its physical visitation, and so destructive in its effects, that courts have taken, and will take judicial notice of it, without other evidence.   The trial court so instructed the jury, and told them that if the loss was caused by it alone the plaintiff could not recover in the action.

The question then is, did, in the circumstances of the case, the interposition of this *vis major* work an exoneration of the defendant from liability, as being the proximate cause of the plaintiff's loss?

Or, were the delays named that proximate cause?   Because there can be but one cause that really is proximate.   To allow two would be a legal solecism and a contradiction in terms.

The position of the plaintiff below is plainly stated in her brief, as follows:

"Our contention is that any delay or negligence of the plaintiff in error which contributed to or caused the goods to be caught in the flood made unavailable the defense of an act of God."

This reduction of the issue to its lowest terms and to a mere matter of law, which admits the quality of the storm as being within the class of things which the company interposed by its shipping stipulation as a defense against liability, does away with much curious and useless legal learning as to what an act of God is, even back to Coke, with whom the term was a favorite —as was to have been expected—and many evolved distinctions,

spun from the inner consciousness of judges into a web as endless as that of Penelope, between it and inevitable accident, and other names of like import—this shortens the discussion admirably. It even relieves against the risk of the irreverence displayed by the Kansas lawyer who in suing for a loss caused by lightning and the answer pleaded what the answer pleads here, came back in a reply, quite responsively, with the allegation: "The plaintiff denies that such loss was caused or occasioned by any act of the said God."

To work an exemption from liability in an otherwise proper case the act of God can be urged only where it is the proximate cause of the loss, the efficient cause, the direct cause, the immediate cause, of course. That it had something to do with bringing about the result, is not enough. Unless it fulfills this condition, it does not excuse. *New Brunswick Steamboat and Canal Transportation Co.* v. *Tiers*, 24 N. J. Law (4 Zab.) 697 [64 Am. Dec. 394]; *Ferguson* v. *Brent*, 12 Md. 9 [71 Am. Dec. 582]; *Hutchinson* v. *U. S. Express Co.* 63 W. Va. 128 [59 S. E. 949; 14 L. R. A. (N. S.) 393]; *Steele* v. *McTyler's Admr.* 31 Ala. 667 [70 Am. Dec. 516].

It must also be the sole cause. In co-operation or concurrence with, or contributing to, other moving causes, unless we are to conclude that the co-operation or concurrence in itself amounts to, and is to be deemed to be, really the proximate cause by process of assimilation or absorption, its use as a shield from liability can not be called in function; such seems to be the better opinion. *Jones* v. *Minneapolis and St. L. Ry.* 91 Minn. 229 [97 N. W. 893; 103 Am St. 507]; *Wald* v. *Pittsburgh, C., C. & St. L. Ry.* 162 Ill. 545 [44 N. E. 888; 35 L. R. A. 356; 53 Am. St. 332]; *Wolf* v. *American Express Co.* 43 Mo. 421[97 Am. Dec. 406]; *Steele* v. *Townsend*, 37 Ala. 247 [79 Am. Dec. 49].

What in any case amounts to such co-operative effect or contributing cause as will constitute in any case the proximate cause, to the exclusion of them in the classification of them as remote causes, and so work a defeat of the use of the act of God as a weapon of defense, is quite another question; and where this consideration brings in the question of delay and its effect in depriving the carrier of the use of his plea, it has given rise

Erie Ry. v. Kohler.

to the sharp controversy evidenced by the two lines of decisions presently to be mentioned.

One of these lines makes up what may be called the Massachusetts, or Pennsylvania rule. It is also the rule of the United States Supreme Court. It is aptly stated in 4 Ruling Case law, Sec. 193:

"In several well considered cases decided by courts of high authority it was decided, while the question was still new, that the negligent delay of the carrier in transportation could not be regarded as the proximate cause of an ultimate loss by a casualty which in itself constituted an act of God, as that term is used in defining the carrier's exemption from liability, although, had the goods been transported with reasonable diligence, they would not have been subjected to such casualty."

In support of this statement the editor cites *Memphis & Charleston Ry.* v. *Reeves,* 77 U. S. (10 Wall.) 176 [19 L. Ed. 909]; *Deaver* v. *Bedford,* 5 Rob. (La.), 245 [39 Am. Dec. 535]; *Denny* v. *N. Y. Cent. Ry.* 79 Mass. (13 Gray) 481 [74 Am. Dec. 645]; *McClary* v. *Sioux City & P. Ry.* 3 Neb. 44 [19 Am. Rep. 631]; *Daniels* v. *Ballantine,* 23 Ohio St. 532 [13 Am. Rep. 264]; *Morrison* v. *Davis,* 20 Pa. St. 171 [57 Am. Dec. 695], and 3 Ann. Cas. 453.

The text then goes on to say:

"These cases are predicated on the view that if the carrier could not reasonably have foreseen or anticipated that the goods would be overtaken by such a casualty as a natural and probable result of the delay, then the negligent act was not the proximate cause of the loss, and should be disregarded in determining the liability for such loss. Many later cases have also adopted this viewpoint, so many in fact that from the mere standpoint of weight of authority this view may be said to 'have slightly the better of the argument. According to these decisions, the fact that events may subsequently prove that the catastrophe amounting to *actus Dei* would not have been encountered if no delay had occurred is, after all, merely a fortuitous result, since it is obvious that the antecedent probabilities are equal that the delay will save the property from, instead of exposing it to, destruction."

The "later cases" brought forward to uphold the doctrine thus enunciated, are *Rodgers* v. *Missouri Pac. Ry.* 75 Kan. 222 [88 Pac. 885; 10 L. R. A. (N. S.) 658; 121 Am. St. 416; 12 Ann. Cas. 441] ; *Green-Wheeler Shoe Co.* v. *Chicago, R. I. & Pac. Ry.* 130 Iowa 123 [106 N. W. 498; 5 L. R. A. (N. S.) 882; 8 Ann. Cas. 45] ; *Yazoo & M. Valley Ry.* v. *Millsaps,* 76 Miss. 855 [25 So. 672; 71 Am. St. 543].

In the Iowa case just cited the syllabus is: "Where a carrier negligently delays a shipment of goods, so that it is destroyed by an act of God which would not have destroyed it, except for the delay, the carrier is not liable," which, we take it, is exactly the argument of the plaintiff in error here.

The text-books which allow that the weight of authority is in support of this view are Thompson. Negligence Sec. 74; Schouler, Bailments, Ed. 1905, 348; Hale, Bailments and Carriers, 361; 6 Cyc. 382. In monographic notes to *Gilson* v. *Del. & Hudson Canal Co.* 36 Am. St. 839, and *Yazoo & M. Valley Ry.* v. *Millsaps, supra,* the authorities are exhaustively considered, and the annotator sums up the result in the following language:

"Where the negligence of a carrier consists merely in a delay in the forwarding of goods, the larger number of authorities sustain the principle that the carrier can not be held liable, if the goods thus delayed are destroyed by the act of God, though, but for the delay, they would have reached a place of safety, the ground assigned being that the delay becomes a remote cause of the loss, when a calamity which could not have been anticipated intervenes."

The opposite contention, which may be called the New York rule, is laid down in the book from which we have already quoted, as follows, Sec. 194:

"On the other hand, as had been stated, there is a respectable authority for the proposition that if a carrier negligently and carelessly delays a shipment, and the goods are overtaken in transit and damaged by an act of God, which would not have caused the damage had there been no delay, he is liable, even though the act of God could not reasonably have been anticipated. In such cases the negligence and unreasonable

Erie Ry. v. Kohler.

delay are deemed to be such a proximate or concurring cause as will render the carrier liable. Courts sustaining this view, in analogy to the well settled rule with reference to deviation, assert the principle that as a carrier is only exempted from liability by showing that an injury was caused by an act of God or the public enemy, to avail himself of such exemption he must show that he was himself free from fault at the time, so that if he departs from the line of his duty, and violates his contract, and while thus in fault, and in consequence of that fault, the goods are injured by an act of God, which would not otherwise have caused the injury, he is not protected. A negligent delay in forwarding goods, they contend, constitutes such a fault or departure from duty, and so is a concurring cause of the loss or injury. Moreover, in opposition to the argument that such a result could not reasonably be anticipated from mere delay, the theory has been advanced that a carrier should, as any reasonable person could, foresee that negligent delay would extend the time during which goods in his hands would be liable to be overtaken by some casualty, and would therefore increase the danger of their being lost to the shipper."

This extract states, and well states, what must be the contention of the defendant in error in·the case at bar, and is, as we understand it, the substance of his reasoning when he says that the defense of an act of God, in this case, is not available to the carrier.

The cases marshalled in its support need not be mentioned by name. They represent the views of the courts of last resort in Alabama, Georgia, Minnesota, New York, Nebraska, West Virginia, Illinois, and perhaps some others. The text-writers who maintain that this rule has the weight of authority on its side are Hutchinson, Carriers, 361, and Raymond, Negligence of Imposed Duties, 177.

We have tried to thus completely develop both of the lines of view upon this most important question, in order to show that, whatever may be thought of the merits of the conclusion we are to reach as to what is the law of this case, that conclusion has not proceeded upon misinformation in regard to judicial authority.

As applied to the case in hand, the two views are in decisive conflict. If the former states the law for us, then the carrier is exonerated from liability and such should have been the judgment of the court below.

If the latter theory of the law is to control, that judgment, following upon the jury's verdict settling the matter of fact, was right and should be upheld, at this point and in this respect.

It will have been observed that the text-writer quoted ranges an Ohio case, *Daniels* v. *Ballantine, supra,* on the side of the view which, under the circumstances of this case, would seem to relieve the carrier from liability. If this is a correct classification of that case, it settles the law for us, as we think. If Ohio law is declared, one way or the other, it becomes immaterial on which side of the question the authority preponderates, or whether the reasoning advanced in support of either view is well or ill-founded. We are guided, coercively, by the adjudications of the court of last resort in Ohio; those of other jurisdictions, where our own has relevantly and undoubtedly spoken, are altogether beside the question.

Let us, therefore, examine *Daniels* v. *Ballantine*, to see whether it furnishes the law for us.

The syllabus states both the facts involved and the law applied to them, and so enables us to compare that case with this case, for all purposes of a proper conclusion. It is as follows:

"The defendants contracted to tow the plaintiff's barge, by means of a steam tug, from Bay City, Michigan, to Buffalo, New York. After the voyage had been commenced, and partially performed, it was voluntarily suspended and delayed by defendants, the barge during the delay being exposed to none of the perils peculiar to the voyage. After the voyage was resumed, and while it was being duly prosecuted, a storm was encountered by which the barge was lost. Held: That the defendants, by the mere fact of the delay, did not become responsible for the loss of the barge, although the delay was unreasonable and unnecessary, and although, as the event proved, the barge, but for the delay, would probably have been safely towed to its place of destination. In such case the storm must be

Erie Ry. v. Kohler.

regarded as the proximate, and the delay as only the remote cause of the loss.''

In reaching that conclusion the court proceeded along the line of reasoning which upholds the first rule discussed in this opinion and held that the conjunction of the delay with the storm was only a fortuitous thing, involving no agency in bringing about the loss. It went further and reduced the argument of the plaintiff to an absurdity by the consideration that if the delay had only been long enough it would have tided the shipment over the storm and brought the goods through in safety; in other words, the carrier's fault had been less if it had been greater. It would be a mere Hibernicism to say that that case is this case, unless there is a distinction between them.

It is our present business to find out whether there is a distinction. We confess that, according to our own lights, we should be unable to find one—at least one that can fairly be said to be a real distinction, a distinction embodying a difference. We are met, however, by the case of *Cincinnati, H. & D. Ry.* v. *Myers & Patty Co.* 40 O. A. & C. 122 (25 N. S. 204; 4 App. 493), decided by the learned court of appeals for the second district, which purports to find a distinction. The loss there was in the same flood, and there was the same delay postponing delivery till the shipment was overtaken by the storm. The court marshals only the cases which support the second view which we have discussed, in most or all of which a common carrier was sued, and then undertakes to distinguish *Daniels* v. *Ballantine* on the single consideration, as we understand, that in the latter the delinquent was not a common carrier. This particular question was not decided in that case, although the court was pressed to pass upon it. We are at a loss to understand why any inference can be deduced from what the court in that case said or omitted to say, favorable to the distinction found by the learned court of appeals, or to justify the effect apparently produced on that court in its going over to the side of the New York rule. On the contrary, we can not well doubt what the holding would have been in *Daniels* v. *Ballantine* had the court passed upon the question, or that its decision in that event would still have been

the same; its intimation to that effect seems not to be at all obscure. It says in the opinion:

"It has sometimes been said that the policy of the law applicable to common carriers required, as to them, the application of a different rule. The weight of authority seems to be the other way; but however this may be, the exigencies of the present case do not require us to determine. It is not alleged that the defendants were common carriers."

What the court was discussing that called forth this remark, was the rule applied in the case, namely, that one in fault is responsible only for the proximate, and not at all for the remote, results or consequences of his wrongdoing. We consider the observation of the court in this respect as suggestive of a disallowance of the very distinction which the learned court of appeals made, pivotal in its judgment fastening a liability on the carrier, and which the carrier, but for the alleged distinction, admittedly could not have been called upon to bear. It is indeed also said by the learned court in *Cincinnati, H. & D. Ry.* v. *Myers & Patty Co. supra*, that that case was founded on contract, whereas the Ballantine case was bottomed on negligence. The syllabus in the latter case shows affirmatively that there was a contract. The fact is the claimed right of action in each case arose upon a negligent breach of a contract. In the sense in which each of the two courts speak, each case was founded on contract and upon negligence in carrying it out. If one was upon contract, so was the other; and the same is the fact in regard to negligence. No difference is observable to us in this further attempted distinction, if indeed such it is intended to be. It is difficult, also, for us to find room for any such distinction upon principle or in the reason of the thing.

The flood by which the damage in this case was immediately wrought was the act of God—confessedly so. God is no respecter of persons. He should not be. He is impartial, even in his disastrous dealings with mankind. Surely, then, the injustice can not be imputed to him of visiting upon common carriers harder blows, or heavier legal consequence, than he deals to individuals or private corporations. It may be, as some scarcely inferior to him in point of wisdom have said, that the

Erie Ry. v. Kohler.

managers of some common carriers are "malefactors of great wealth," and are to be classed as "undesirable citizens;" still God himself tells us that he sends his rain upon the just and the unjust alike—including, as we are at liberty to suppose, the great rain of March, 1913. Some of our various agrarian laws do indeed take away defenses from common carriers. But these are the work of legislatures—mere finite things, who hardly pretend to be just or impartial.

In view of these considerations—and others—and again according to our lights, we are unable to find, in the mere fact that we are dealing with a common carrier, the distinction which the court in the second district found, and upon which alone, as we conceive, its judgment was allowed to depend—otherwise destructive of the rule applied in *Daniels* v. *Ballantine.* On account of this inability, we do not feel justified in adjudging what in effect would, to our own apprehension, work a substantial reversal of the Supreme Court above us. If that is to be done, it must be done. so far as we are concerned, by that court and not this court. We should have to do this, as we think, in effect, if we were to affirm the judgment before us for review.

We say this, having the highest regard for the learned court from whom it is our misfortune but disagreeable duty thus to differ, and with every disposition to save the verdict of the jury now challenged at th's bar.

We find, and hold, under the undisputed facts of this case. that the judgment we are reviewing is without support in the law of Ohio, and should have been for the defendant and not for the plaintiff below, as it was.

As this found error is fundamental and goes to the whole case, that fact obviates the necessity or propriety of a particular consideration of others assigned and argued before us. and the disposition of which is comprehended in that already made of the whole case. This is said in view of the judgment we are about to render. Specifically, the court should have given in charge to the jury defendant's request No. 1, made before argument, which directed a verdict to be returned the defendant. It was error to refuse it.

This conclusion, in opposition, as appears, to that reached

Cuyahoga County Appeals.

by the learned court for the second district, operates, we apprehend, a conflict of decision, within the meaning of the constitutional provision, which in such cases secures to the parties a review of the case by the Supreme Court. The party defeated by our judgment is entitled to a certificate of conflict, which will cheerfully be allowed if application is made for it. In that review our error in this decision, if error there is, will be corrected, our only desire being to be right, whether as of first instance or under the coercive operation of a judicial reversal of our work.

The judgment complained of is reversed.

The facts not being in dispute, we find, upon the matter of law thus alone left in the case, that the judgment should have been for the defendant below and not for the plaintiff; we proceed, therefore, now to render that judgment, which is that the plaintiff in error, the Erie Railroad Company, go hence without day, and that it recover its costs in the cause made.

**Meals** and **Carpenter, JJ.,** concur.