REUBEN S. DENNY vs. NEW YORK CENTRAL RAILROAD
·COMPANY.

The proprietors of a railroad, who negligently delay the transportation of goods delivered
to them as common carriers, and then transport them safely to their destination, are not
responsible for injuries to the goods by a flood while in their depot at that place, although
the goods would not have been exposed to such injury but for the delay.

ACTION OF TORT for damages to wool of the plaintiff, deliv-
ered by him to the defendants as common carriers of merchan-
dise, to be transported from the Suspension Bridge at Niagara
Falls to Albany.   Trial before *Metcalf*, J., who made the follow-
ing report thereof:

" It appeared that the wool·described in the declaration was
received by the defendants at Suspension Bridge, directed to
Boston, on the 27th of January 1857, and that it arrived at
Albany on the 6th of February following ; and, being there in
the defendants' freight depot, was submerged by a sudden and
violent flood in Hudson River, which caused the alleged injury
to the wool.   It appeared in evidence, that the time required for
transporting merchandise, in the usual course of business, from
Suspension Bridge to Albany, was forty eight hours.

" The defendants introduced evidence tending.to show that
the wool was carried safely and without delay over their route
as far as Syracuse, that it was delayed there six days, and was
then carried safely and without further delay to Albany, and
was there deposited, at the end of their route, in a safe and
proper depot, with all due precautions against accident by flood
or otherwise ; that the delay at Syracuse was caused by the fact
that they had not a sufficient number of engines to transport the
freight which was ready for transportation ; that they provided
engines sufficient to meet all usual demands and all exigencies
which could be foreseen ; that early in January 1857, when they
had a large surplus of engines, a season of unusually severe cold
commenced, by reason of which cold their engines were broken
at the rate of one a day for a fortnight; but that they had

power enough for their business until the 20th of said January; that the delay at Syracuse was caused solely by the cause above stated, and that they made all proper efforts to forward the freight,. and did forward it as fast as they could.

" They also introduced evidence tending to prove that the flood which caused the injury to the wool was occasioned by the lodging of ice in Hudson River, below the city of Albany, which formed a dam across the river, and caused a higher·flood in that city than was ever before known ; that the water rose four feet in fifteen minutes, and wet the plaintiff's wool, which had been deposited in a depot, as hereinbefore stated; and that the defendants used their best exertions to secure the wool from injury by said flood.

" It was in evidence that the plaintiff received the wool at Boston, after it was injured by the flood at Albany, and sold the same at a less price than it would have brought, if it had not been injured.

" It appeared from the defendants' books, which were introduced in evidence, that the car which contained the plaintiff's wool was detained at Syracuse two or three days longer than the other cars which left Suspension Bridge in the same train on the 27th of January.

" The plaintiff contended, 1st. That the defendants had been guilty of negligence in not forwarding his wool from Suspension Bridge to Albany in a shorter time. 2d. That the wool was not deposited in a proper depot, at Albany, as was shown by its being injured there by water. 3d. That the defendants did not exercise the care required of them by law in attempting to save the plaintiff's wool from injury by the flood.

" The jury received instructions, which were not excepted to, as to the care and diligence required of the defendants, in transporting the plaintiff's wool, depositing it in a depot at Albany, and using their efforts to rescue it from the effects of the flood. there. The jury were directed to assess the plaintiff's damages for the injury to his wool, caused by the flood ; and were also requested to find specially :

"1st. Whether the defendants were wanting in that degree

of care and diligence which the law required of them in season-ably transporting the plaintiff's wool from the Suspension Bridge to Albany, and whether the wool was injured by reason of the want of such care and diligence.

" 2d. Whether the defendants were wanting in that degree of care which the law required of them in depositing the plaintiff's wool in a proper place, when it arrived at Albany.

" 3d. Whether the defendants were wanting in that degree of care which the law required of them, in attempting to save the plaintiff's wool from the injury which it received at the place where it was deposited by them, on its arrival at Albany.

" The jury found a verdict for the plaintiff, assessing his damages at $421.07; and answered the first and third of the above questions in the affirmative, and the second in the negative. If, on these findings of the jury, the defendants are not, for any legal reason, liable for the injury to the plaintiff's wool, the plaintiff is to become nonsuit, or a new trial is to be ordered, as the whole court shall direct; otherwise, judgment is to be rendered on the verdict."

The case was also reserved on a motion of the defendant to set aside the verdict of the jury on the third question, as against the weight of evidence. That motion was, by order of the court, argued first before the judge who presided at the trial, and was granted by him, and the case was then argued before the full court on the questions of law raised by the report.

*G. F. Hoar*, for the defendants, cited Story Bailm. §§ 122, 509, 515, 526; Angell on Carriers, § 201; *Marble* v. *Worcester*, 4 Gray, 395; *Robinson* v. *Austin*, 2 Gray, 564; *Scovill* v. *Griffith*, 2 Kernan, 509; *Davis* v. *Garrett*, 6 Bing. 716; *Parker* v. *James*, 4 Campb. 112; *Stevens* v. *Boston & Maine Railroad*, 1 Gray, 277; *Morrison* v. *Davis*, 20 Penn. State R. 171; *Waite* v. *Gilbert*, 10 Cush. 177; *Ingledew* v. *Northern Railroad*, 7 Gray, 86; *Sprowl* v. *Kellar*, 4 Stew. & Port. 382; *Hazard* v. *New England Marine Ins. Co.* 1 Sumner, 229; Sewall, J., in *Delano* v. *Bedford Ins. Co.* 10 Mass. 354; *Livie* v. *Janson*, 12 East, 648; *Green* v. *Elmslie*, Peake R. 212; 1 Phil. Ins. §§ 1096, 1132; *Kimball* v. *Western Railroad*, 6 Gray, 542; *Norway Plains Co.* v. *Boston &*

*Maine Railroad,* 1 Gray, 263, and cases cited; *Nutting* v. *Connecticut River Railroad,* 1 Gray, 502; *Thomas* v. *Boston & Providence Railroad,* 10 Met. 472, and cases cited.

*F. H. Dewey,* for the plaintiff, cited 2 Kent Com. (6th ed.) 586–602; Chitty & Temple on Carriers, 83, 158; Angell on Carriers, §§ 163, 164; Story Bailm. § 509; *Davis* v. *Garrett,* 6 Bing. 716; *Oakley* v. *Portsmouth & Ryde Steam Packet Co.* 11 Exch. 618; *Clark* v. *Barnwell,* 12 How. 272; *Williams* v. *Grant,* 1 Conn. 487, 492; *Crosley* v. *Fitch,* 12 Conn. 410; *Campbell* v. *Morse,* Harper, 468; *Fuller* v. *Bradley,* 25 Penn. State R. 120; *O'Conner* v. *Forster,* 10 Watts, 418; *Bowman* v. *Teall,* 23 Wend. 306; *Bracket* v. *M'Nair,* 14 Johns. 170; *Kent* v. *Hudson River Railroad,* 22 Barb. 278; *Wibert* v. *New York & Erie Railroad,* 19 Barb. 36; *Walker* v. *York & North Midland Railway,* 2 El. & Bl. 750; *York, Newcastle & Berwick Railway* v. *Crisp,* 14 C. B. 527; *Wilson* v. *York, Newcastle & Berwick Railway,* 18 Eng. Law & Eq. R. 557 note; *Brandt* v. *Bowlby,* 2 B. & Ad. 932.

MERRICK, J. This action is brought to recover compensation for damages alleged to have been sustained by the plaintiff in consequence of an injury to a quantity of his wool delivered to the defendants to be transported for him from Suspension Bridge to Albany. It appears from the report that the wool, directed to Boston, was received by them at the former, and carried to the latter place, and was there safely deposited in their freight depot. But it was not transported seasonably nor with reasonable dispatch. By their failure to exercise the degree of care and diligence required of them by law, it was detained six days at Syracuse, and consequently arrived at Albany so many days later than it should regularly have been there. Whilst it was lying in the defendant's freight depot in that city, it was submerged by a sudden and violent flood in the Hudson River. This rise of the water caused the alleged injury to the wool.

Upon the evidence adduced by the parties at the trial, three questions of fact were submitted to the determination of the jury. It is necessary now to advert only to the first of those questions; for the finding of the jury in relation to the second

was in favor of the defendants, and the verdict in relation to the third has on their motion been already set aside as having been rendered against the weight of evidence in the case.

In looking at the terms and language in which the action of the jury in reference to the first of these questions is expressed, it would perhaps, at first sight, seel 1 that they had passed upon and determined the precise point in issue between the parties, namely, whether the wool was injured by reason of an omission on the part of the defendants to exercise the care and diligence in the transportation of the wool, which the law required of them as common carriers. If this were so, it would have been a final and conclusive determination. But upon a closer scru tiny of the statements in the report, it appears that the jury, by their answer to the question submitted to them, intended only to affirm, that the defendants failed to exercise due care and diligence in the prompt and seasonable transportation of the wool, and that by reason of this failure and the consequent de- tention of the wool at Syracuse it was injured by the rise of water in the Hudson, and thereby sustained damage to which it would not have been exposed if it had arrived at Albany as soon as it should have done, because in that event it would have been taken away from the defendants' freight depot, and carried forward to Boston before the occurrence of the flood. And it was upon this ground that the verdict was rendered for the plaintiff. This was so considered by both parties in their argu- ments upon the questions of law arising upon the report.

It is therefore now to be determined by the court, whether the defendants are, by reason and in consequence of their negligence in the prompt and seasonable transporation of the wool, respon- sible for the injury which it sustained after it was safely depos- ited in their depot at Albany. And we think it is very plain that, upon the well settled principles of law applicable to the subject, they are not.

It is said to be an ancient and universal rule resting upon obvious reason and justice, that a wrongdoer shall be held responsible only for the proximate and not for the remote con- sequences of his actions. 2 Parsons on Con. 456. The rule is

41 *

not limited to cases in which special damages arise; but is ap‹ plicable to every case in which damage results from a contract violated or an injurious act committed. 2 Greenl. Ev. § 256. 2 Parsons on Con. 457. And the liabilities of common carriers, like persons in other occupations and pursuits, are regulated and governed by it. Story on Bailments, 586. Angell on Carriers, 201. *Morrison* v. *Davis,* 20 Penn. State R. 171.

In the last named case, it is said that there is nothing in the policy of the law relating to common carriers, that calls for any different rule, as to consequential damages, to be applied to them. In that case may be found not only a clear and satisfactory statement of the law upon the subject, but a significant illustration of the rule which the decision recognizes and affirms. It was an action against the defendants, as common carriers upon the Pennsylvania Canal. It appeared that their canal boat, in which the plaintiff's goods were carried, was wrecked below Piper's Dam, by reason of an extraordinary flood; that the boat started on its voyage with a lame horse, and by reason thereof great delay was occasioned in the transportation of the goods; and that, had it not been for this, the boat would have passed the point where the accident occurred, before the flood came, and would have arrived in time and safety at its destination. The plaintiff insisted that, inasmuch as the negligence of the defendants in using a lame horse for the voyage occasioned the loss, they were therefore liable for it. But the court, assuming that the flood was the proximate cause of the disaster, held, that the lameness of the horse, by reason of which the boat, in consequence of his inability thereby to carry it forward with the usual and ordinary speed, was exposed to the influence and dangers of the flood, was too remote to make the defendants responsible for the goods which were lost in the wreck. It was only, in connection with other incidents, a cause of the final, direct and proximate cause by which the damages sought to be recovered were immediately occasioned.

There is so great a resemblance between the circumstances upon which the determination in that case was made, and those upon which the question under consideration in this arises, that

the decision in both ought to be the same. In this case, the defendants failed to exercise due care and diligence, in not being possessed of a sufficient number of efficient working engines to transport the plaintiff's wool with the usual, ordinary and reasonable speed. The consequence of this failure on their part was that the wool was detained six days at Syracuse. This was the full and entire effect of their negligence, and for this they are clearly responsible. But in all that occurred afterwards there was no failure in the performance of their duty. There was no delay and no negligence in any part of the transportation between Syracuse and Albany, and upon reaching the latter place the wool was safely and properly stored in their freight depot. It was their duty to make this disposition of it. They had then reached the terminus of their road; the carriage of the goods was then complete; and the duty only remained of making delivery. The deposit of the wool in the depot was the only delivery which they were required to make; and having made that, their liabilities as carriers thenceforward ceased. It was there to be received by the owner, or taken up by the proprietors of the railroad next in course of the route to Boston. *Norway Plains Co.* v. *Boston & Maine Railroad*, 1 Gray, 263. *Nutting* v. *Connecticut River Railroad*, 1 Gray, 502. The rise of waters in the Hudson, which did the mischief to the wool, occurred at a period subsequent to this, and consequently was the direct and proximate cause to which that mischief is to be attributed. The negligence of the defendants was remote; it had ceased to operate as an active, efficient and prevailing cause as soon as the wool had been carried on beyond Syracuse, and cannot therefore subject them to responsibility for an injury to the plaintiff's property, resulting from a subsequent inevitable accident which was the proximate cause by which it was produced. It is to the latter only to which the loss sustained by him is attributable.

It follows from these considerations, that the verdict in the plaintiff's behalf must be set aside, and a new trial be had; in which he will recover such damages as he proves were the direct consequence of the negligence of which the defendants may be shown to have been guilty.     *New trial ordered.*