J. O. RODGERS V. THE MISSOURI PACIFIC RAILWAY COMPANY.

No. 14,886   (88 Pac. 885.)

SYLLABUS BY THE COURT.

CARRIERS—*Negligent Delay in Moving Goods—Destruction by Act of God.* The negligent delay of a carrier in moving goods entrusted to it for transportation, not so unreasonable as to amount to a conversion, will not render it liable for the loss of such goods after they have been carried to their destination if they are there destroyed by an act of God before delivery.

Error from Marshall district court; SAM KIMBLE, judge. Opinion filed February 9, 1907. Affirmed.

*W. W. Redmond,* for plaintiff in error.

*Waggener, Doster & Orr,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: Plaintiff sued the railroad company for the value of a car-load of corn. The right to recover was predicated upon the defendant's negligence. The corn was delivered to the company at Frankfort, on May 22, 1903, for transportation and delivery to the plaintiff's agent at Kansas City, Mo. The loaded car stood on the track at Frankfort until May 28, when it was hauled to its destination, only to be overtaken and destroyed by the unprecedented flood of May 30, 1903. The delay was protracted through the negligent omission of the company to move the car. The flood was an act of God. The district court rendered judgment for the defendant, and the plaintiff prosecutes error.

If the fundamental principles of legal liability for negligence are to be regarded, the judgment of the district court is correct. The maxim is: *"In jure non remota causa, sed proxima, spectatur."* If a carrier be guilty of negligence not in itself harmful, but wrongful only because of injurious consequences which may

follow, and a new cause intervene between such negligence and the injury complained of, which new cause is not a consequence of the original negligence, which reasonable prudence on the part of the original wrongdoer could not have anticipated, and but for which the injury could not have happened, the new cause is the proximate cause and the original negligence is disregarded as not affecting the final result.

Carriers do not assume the risk of loss caused by the act of God.

Sir Frederick Pollock, a man admirably fitted by temperament, learning and literary skill to do so, has summed up the law relating to proximate cause, as established by the judicial wisdom of England, in his book on Torts. He develops the essential principles in the following eminently scientific way:

"We shall now consider for what consequences of his acts and defaults a man is liable. When complaint is made that one person has caused harm to another, the first question is whether his act was really the cause of that harm in a sense upon which the law can take action. The harm or loss may be traceable to his act, but the connection may be, in the accustomed phrase, too remote. The maxim *'in jure non remota, causa sed proxima, spectatur'* is Englished in Bacon's constantly cited gloss: 'It were infinite for the law to judge the causes of causes, and their impulsions one of another; therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any further degree.' Liability must be founded on an act which is the 'immediate cause' of harm or of injury to a right. . . . The meaning of the term 'immediate cause' is not capable of perfect or general definition. Even if it had an ascertainable logical meaning, which is more than doubtful, it would not follow that the legal meaning is the same. In fact, our maxim only points out that some consequences are held too remote to be counted. What is the test of remoteness we still have to inquire. The view which I shall endeavor to justify is that, for the purpose of civil liability, those consequences, and those only, are deemed 'immediate,' 'proximate,' or, to anticipate a lit-

tle, 'natural and probable,' which a person of average competence and knowledge, being in the like case with the person whose conduct is complained of, and having the like opportunities of observation, might be expected to foresee as likely to follow upon such conduct. . . . This principle is commonly expressed in the maxim that 'a man is presumed to intend the natural consequence of his acts'; or, in the terms of a judicial statement, 'a party must be considered, in point of law, to intend that which is the necessary and natural consequence of that which he does.' . . . Although we do not care whether the man intended the particular consequence or not, we have in mind such consequences as he might have intended, or, without exactly intending them, contemplated as possible; so that it would not be absurd to infer as a fact that he either did mean them to ensue, or recklessly put aside the risk of some such consequences ensuing. This is the limit introduced by such terms as 'natural'—or, more fully, 'natural and probable'—consequences. . . . The doctrine of 'natural and probable consequence' is most clearly illustrated, however, in the law of negligence. For there the substance of the wrong itself is failure to act with due foresight; it has been defined as 'the omission to do something which a reasonable man, guided upon those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do.' Now a reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things. This being the standard, it follows that if in a particular case (not being within certain special and more stringent rules) the harm complained of is not such as a reasonable man in the defendant's place should have foreseen as likely to happen, there is no wrong and no liability. And the statement proposed, though not positively laid down, in *Greenland v. Chaplin,* namely, 'that a person is expected to an-

ticipate and guard against all reasonable consequences, but that he is not, by the law of England, expected to anticipate and guard against that which no reasonable man would expect to occur,' appears to contain the only rule tenable on principle where the liability is founded solely on negligence. 'Mischief which could by no possibility have been foreseen, and which no reasonable person would have anticipated,' may be the ground of legal compensation under some rule of exceptional severity; and such rules, for various reasons, exist; but under an ordinary rule of due care and caution it cannot be taken into account." (Pollock, Torts, 6th ed., 28, 30, 33, 34, 39.)

A similar service has been performed for the jurisprudence of the United States by Thomas M. Cooley. Under the title "Proximate and Remote Cause" he says:

"It is not only requisite that damage, actual or inferential, should be suffered, but this damage must be the legitimate sequence of the thing amiss. The maxim of the law here applicable is that in law the immediate and not the remote cause of any event is regarded; and in the application of it the law rejects, as not constituting the foundation for an action, that damage which does not flow proximately from the act complained of. In other words, the law always refers the injury to the proximate, not to the remote, cause. The explanation of this maxim may be given thus: If an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to the last or proximate cause, and refuse to trace it to that which was more remote. The chief and sufficient reason for this rule is to be found in the impossibility of tracing consequences through successive steps to the remote cause, and the necessity of pausing in the investigation of the chain of events at the point beyond which experience and observation convince us we cannot press our inquiries with safety. To the proximate cause we may usually trace consequences with some degree of assurance; but beyond that we enter a field of conjecture, where the uncertainty renders the attempt at exact

conclusions futile. A writer on this subject has stated the rule in the following language: If the wrong and the resulting damage are not known by common experience to be naturally and usually in sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, then the wrong and the damage are not sufficiently conjoined or concatenated as cause and effect to support an action.

"As this principle is of the highest importance in the law of torts, and the right of action in many cases, and the extent of recovery in others, depends upon it, it may be well to consider it a little further. In doing this we lay down the following propositions:

"(1) The one already more than once mentioned, that in the case of any distinct legal wrong, which in itself constitutes an invasion of the right of another, the law will presume that some damage follows as a natural, necessary and proximate result. Here the wrong itself fixes the right of action; we need not go further to show a right of recovery, though the extent of recovery may depend upon the evidence.

"(2) When the act or omission complained of is not in itself a distinct wrong, and can only become a wrong to any particular individual through injurious consequences resulting therefrom, this consequence must not only be shown, but it must be so connected by averment and evidence with the act or omission as to appear to have resulted therefrom according to the ordinary course of events, and as a proximate result of a sufficient cause.

"(3) If the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those which were innocent. But if the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote." (Cooley, Torts, 3d ed., 99.)

This text is illustrated by the "squib case"—*Scott v. Shepherd,* 3 Wils. (Eng.) 403, 2 W. Bl. 892, the "balloon case"—*Guille v. Swan,* 19 Johns. (N. Y.) 381, 10

Am. Dec. 234, the flood case of *Morrison v. Davis &
Co.*, 20 Pa. St. 171, 57 Am. Dec. 695, and by others.
The statement and discussion of *Morrison v. Davis
& Co.*, which is strictly analogous in its facts to the
present case, are as follow:

"In that case common carriers undertook to transport
goods from Philadelphia to Pittsburg by canal. While
on their way the goods were destroyed by an extra-
ordinary flood. There was evidence that the goods
would not have been at the place of injury but for their
having been delayed by the lameness of a horse at-
tached to the boat; and the argument made on behalf
of the plaintiff was that the culpability of the defend-
ants in allowing the boat to be delayed by the lameness
of the horse, having exposed the boat to the flood, was
the proximate cause of the loss. Now, if human fore-
sight could foresee the exact time when such a flood
might be anticipated, the argument would be unanswer-
able; but as this is impossible, and an accident of the
sort is as likely to overwhelm a boat that has been
moved with due diligence as one that has been unrea-
sonably delayed, it is obvious that the antecedent prob-
abilities are equal that the delay will save the boat in-
stead of exposing it to destruction. As is said by the
court in the case referred to: 'A blacksmith pricks a
horse by careless shoeing. Ordinary foresight might
anticipate lameness, and some days or weeks of unfit-
ness for use; but it could not anticipate that by reason
of the lameness the horse would be delayed in passing
through a forest until a tree fell and killed him or in-
jured his rider; and such injury would be no proper
measure of the blacksmith's liability.'" (Cooley,
Torts, 3d ed., 107.)

Two acute and able authors, Mr. Hughes and Pro-
fessor Street, have recently undertaken to rescue the
drifting doctrines of the law from the flood of "cases"
pouring from the multitude of opinion-writing courts
in this and other countries, and to bring them back to
safe moorings. They seek to do this by an investiga-
tion of the fountainheads of the law, its maxims and
the utterances of its great masters, and by a consid-
eration of its history and philosophy, to the neglect of

"weight-of-authority" decisions and those which are merely "recent." Mr. Hughes indicates his views upon the matter in hand as follows:

"From the definition of negligence it appears that, to be actionable, it must result from an act of commission or omission in violation of a law commanding or forbidding it; consequently it must be the natural, direct and probable cause of the injury complained of. . . . If an independent agency intervene, this will break the causal connection, unless under all the circumstances of the case this intervention itself should have been anticipated." (2 Hughes, Proc. 1043.)

Professor Street refers to *Morrison v. Davis & Co.*, 20 Pa. St. 171, 57 Am. Dec. 695, and *Denny v. New York Central Railroad Company*, 79 Mass. 481, 74 Am. Dec. 645—another case involving delay by a carrier and loss by flood—in the following language:

"In the following cases the admitted or established negligence of the defendant was held not to be the effective legal cause or proximate cause of the damage or injury for which recovery was sought. It is obvious that in these cases the damage could not be said to be the natural result of the negligence declared on. It was simply due to some other factor. And the conclusion reached in these cases must be the same whether liability is supposed to extend to all natural consequences or only to such as may be foreseen." (1 Street, Found. Leg. Liab. 118.)

This court has upon numerous occasions discussed the principles upon which the problem involved must be solved. (*A. T. & Santa Fe Rld. Co. v. Stanford*, 12 Kan. 354, 377, 15 Am. Rep. 362; *Cleghorn v. Thompson*, 62 Kan. 727, 64 Pac. 605, 54 L. R. A. 402; *Light Co. v. Koepp*, 64 Kan. 735, 68 Pac. 608; *Railway Co. v. Columbia*, 65 Kan. 390, 69 Pac. 338, 58 L. R. A. 399; *Stephenson v. Corder*, 71 Kan. 475, 80 Pac. 938, 69 L. R. A. 246; *Schwarzschild v. Weeks*, 72 Kan. 190, 83 Pac. 406, 4 L. R. A., n. s., 515. See, also, the opinion of Garver, J., in *C. K. & W. Rly. Co. v. Bell*, 1 Kan. App. 71, 41 Pac. 209.)

Rodgers v. Railway Co.

In the early case of *A. T. & Santa Fe Rld. Co. v. Stanford,* 12 Kan. 354, 15 Am. Rep. 362, Mr. Justice Valentine said:

"In law, proximate and remote causes and effects do not have reference to time, nor distance, nor merely to a succession of events, or to a succession of causes and effects. A wrong-doer is not merely responsible for the first result of his wrongful act, but he is also responsible for every succeeding injurious result which could have been foreseen, by the exercise of reasonable diligence, as the reasonable, natural and probable consequence of his wrongful act. He is responsible for any number of injurious results consecutively produced by impulsion, one upon another, and constituting distinct and separate events, provided they all necessarily follow from the first wrongful cause. Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence; and if they are such as might, with reasonable diligence, have been foreseen, the last result, as well as the first, and every intermediate result, is to be considered in law as the proximate result of the first wrongful cause. But whenever a new cause intervenes which is not a consequence of the first wrongful cause, which is not under the control of the wrong-doer, which could not have been foreseen by the exercise of reasonable diligence by the wrong-doer, and except for which the final injurious consequence could not have happened, then such injurious consequence must be deemed to be too remote to constitute the basis of a cause of action." (Page 377.)

In the case of *Railway Co. v. Columbia,* 65 Kan. 390, 69 Pac. 338, 58 L. R. A. 399, it was charged that grain-doors for cars were negligently piled and permitted to remain upon a depot platform. A severe gale blew them upon the railway track, causing the derailment of an engine and the death of its fireman. It was held that the gale was the proximate cause of the fireman's injuries. The syllabus reads:

"In a case where two distinct, successive causes, wholly unrelated in operation, contribute toward the production of an accident resulting in injury and dam-

age, one of such causes must be the proximate, and the other the remote, cause of the injury.

"A prior and remote cause cannot be made the basis of an action for the recovery of damages if such remote cause did nothing more than furnish the condition, or give rise to the occasion, by which the injury was made possible, if there intervened, between such prior or remote cause and the injury, a distinct, successive, unrelated and efficient cause of the injury."

In the case of *Stephenson v. Corder*, 71 Kan. 475, 80 Pac. 938, 69 L. R. A. 246, a man tied his mare to a hitching-rail on a public street. The chin-strap of the halter was defective. A boy struck the mare on the nose with his foot while turning "flip-flops" over the rail. She broke loose, ran away, collided with a buggy, and injured its occupant. It was held that the striking of the mare on the nose by the boy's foot was the proximate cause of the injury. The court said:

"The injurious result would not have followed had not the new and independent cause intervened. This new cause had no causal connection with the negligence of Stephenson. The hitting of the mare on the nose by the boy was not caused by the defect in the halter, nor was it under the control of Stephenson; nor can it be said with the slightest fairness that it could have been foreseen by the exercise of reasonable diligence on his part." (Page 482.)

It is scarcely worth while to debate further than these authorities have done the propriety of the rule that a carrier cannot be negligent, and therefore liable in damages, for omitting to take precautions against events which are beyond human foresight and which he does not cause. He is obliged to anticipate that delay in transportation may result in the deterioration of perishable freight, and that fluctuating markets may fall, but he cannot be charged with foreknowledge of floods like the one which devastated the railroad yards at Kansas City in 1903. He is under no duty to make provision against such phenomena. In the present case there is no causal relation between the

negligence charged and the catastrophe which overtook the plaintiff's property. The carrier's delay did not produce the flood, and for all the carrier could foresee promptitude might have been as dangerous as delay. The delay was a mere incident to the destruction of the car of grain. The *causa causans* was the flood, the inevitableness of which could not be determined by anything which the carrier might do. As expressed by Mr. Justice Peters in the case of *O'Brien v. Mc-Glinchy*, 68 Me. 552, 557, the negligence of the carrier had but a casual, while the flood had a causal, connection with the ultimate event.

Little can be added to the reasons given by Lord Bacon and Judge Cooley for resting responsibility upon the proximate cause. The pages upon pages of dreary disquisition upon the subject attest the folly of embarrassing the administration of justice by entangling it in logical and metaphysical refinements and subtleties. It is sufficiently difficult in most cases to ascertain even the proximate cause. The affairs of life are so varied and complicated, the relations of cause and consequence so complex and far-reaching, that the law, as a practical science, cannot, with any degree of safety or assurance, pass beyond the near, efficient and predominating cause to investigate whether others more remote have contributed to an event. If it were to attempt to do so, and negligence in any degree were to be counted, the punishment might be outrageously disproportionate to the fault; and a maze of difficulties would encompass every effort to make a just apportionment of damages. As Mr. Justice Marston, of the supreme court of Michigan, has said:

"It may be true that had there been no delay whatever on the part of the defendant the loss would not have happened. The law, however, cannot enter upon an examination of, or inquiry into, all the concurring circumstances which may have assisted in producing the injury, and without which it would not have occurred. To do so would only be to involve the whole

matter in utter uncertainty, for when once we leave the direct, and go to seeking after remote causes, we have entered upon an unending sea of uncertainty, and any conclusion which should be reached would depend more upon conjecture than facts." (*Michigan Central R. R. Co. v. Burrows*, 33 Mich. 6, 14.)

The principles discussed have been applied in the following among other cases: *Railroad Company v. Reeves*, 77 U. S. 176, 19 L. Ed. 909. (Freight not forwarded promptly—overtaken by unprecedented flood. See, also, *St. Louis &c. Railway v. Commercial Ins. Co.*, 139 U. S. 223, 237, 11 Sup. Ct. 554, 35 L. Ed. 154.) *Empire State Cattle Co. v. Atchison, T. & S. F. Ry. Co.*, 135 Fed. 135. (Shipment of cattle delayed by negligence—loss at Kansas City by flood of 1903. In the opinion Pollock, district judge, collates decisions of the federal courts.) *Lehman, Durr & Co. v. Pritchett*, 84 Ala. 512, 4 South. 601. (Delay in executing order to sell cotton—loss by fire.) *James v. James*, 58 Ark. 157, 23 S. W. 1099. (Failure to gin cotton promptly— destruction by fire.) *Rodgers v. C. P. R. R. Co.*, 67 Cal. 607, 8 Pac. 377. (Defective bridge destroyed by cloudburst.) *Dubuque Wood and Coal Association v. City and County of Dubuque*, 30 Iowa, 176. (Delay in repairing bridge—wood awaiting removal lost by flood.) *James Dalzell v. Steamboat Saxon*, 10 La. Ann. 280. (Delay in carriage of goods—injury by sudden rise of river.) *Denny v. New York Central Railroad Company*, 79 Mass. 481, 74 Am. Dec. 645. (Delay in transporting wool—loss by flood. See, also, *Hoadley v. Northern Transportation Company*, 115 Mass. 304; 15 Am. Rep. 106.) *Michigan Central R. R. Co. v. Burrows*, 33 Mich. 6. (Delayed freight encountered freezing weather. See, also, *Carnegie, Phipps & Co. v. Holt*, 99 Mich. 606, 58 N. W. 623.) *Wharfboat Association v. Wood & Co.*, 64 Miss. 661, 2 South. 76, 60 Am. Rep. 76; *Railroad v. Millsaps*, 76 Miss. 855, 25 South. 672. (Failure to ship cotton at first opportunity—loss by fire.) *Clark v. Pacific R. R.*, 39 Mo. 184, 90 Am. Dec.

458. (Transportation delayed—on arrival at destination goods destroyed by public enemy.) *Grier v. Railroad,* 108 Mo. App. 565, 84 S. W. 158; *Commission Co. v. Railroad Co.,* 113 Mo. App. 544, 88 S. W. 117; *Elam v. St. Louis & S. F. R. Co.* (Mo. App.), 93 S. W. 851. (These cases involve losses consequent upon the Kansas and Missouri river floods of 1903.) *McVeagh & Co. v. A. T. & S. F. R'y Co.,* 3 N. M. 327, 5 Pac. 457. (Failure to forward goods—seizure on. legal process.) *Extinguisher Co. v. Railroad,* 137 N. C. 278, 49 S. E. 208. (Negligent failure to forward goods—loss by fire.) *Daniels et al. v. Ballantine et al.,* 23 Ohio St. 532. (Tug towing barge suspended voyage—after voyage resumed barge destroyed by storm.) *Morrison v. Davis & Co.,* 20 Pa. St. 171, 57 Am. Dec. 695. (Canal-boat drawn by lame horse wrecked by flood. See, also, *Jones v. Gilmore,* 91 Pa. St. 310.) *Lamont & Co. v. Nashville & Chattanooga Railroad Company,* 9 Heisk. (Tenn.) 58. (Neglect to forward goods promptly—loss by flood.) *G. C. & S. F. Ry. Co. v. Darby & Gauthen,* 28 Tex. Civ. App. 229, 67 S. W. 129; *International & G. N. R. Co. v. Bergman* (Tex. Civ. App.), 64 S. W. 999. (Delay in delivering. shipment of wheat —loss by great storm at Galveston.) *Davis & Gay v. C. V. R. R. Co.,* 66 Vt. 290, 29 Atl. 313, 44 Am. St. Rep. 852. (Delay in forwarding grain stored in defendant's elevator—elevator burned.) *Herring v. Chesapeake & W. R. Co.,* 101 Va. 778, 45 S. E. 322. (Delay in transporting stock—damage by exceptional snow and cold.)

The question of the carrier's liability as an insurer of freight was not involved in some of the decisions cited. But it must be obvious that if the law, not only for practical reasons but as a means of substantial justice, altogether rejects and refuses to consider remote causes and regards the proximate cause only, the carrier is entitled to claim exemption for a loss of which the act of God is the proximate cause.

"It is said to be an ancient and universal rule, resting upon obvious reason and justice, that a wrong-doer

shall be held responsible only for the proximate and not for the remote consequences of his actions. 2 Parsons, Con. 456. The rule is not limited to cases in which special damages arise; but is applicable to every case in which damage results from a contract violated or an injurious act committed. 2 Greenl. Ev. § 256; 2 Parsons, Con. 457. And the liabilities of common carriers, like persons in other occupations and pursuits, are regulated and governed by it. Story, Bail., 586; Angell, Car., 201; *Morrison v. Davis,* 20 Penn. St. 171, 57 Am. Dec. 695." (*Denny v. New York Central Railroad Company,* 79 Mass. 481, 485, 74 Am. Dec. 645.)

"A common carrier assumes all risks except those caused by the act of God and the public enemy. One of the instances always mentioned by the elementary writers of loss by the act of God is the case of loss by flood and storm. Now, when it is shown that the damage resulted from this cause immediately, he is excused." (*Railroad Company v. Reeves,* 77 U. S. 176, 189, 19 L. Ed. 909.)

"A common carrier is protected from liability for the loss of property entrusted to it for transportation only when it is made to appear that the loss was occasioned by the act of God or the public enemy, or where the loss or damage results from some inherent quality or infirmity in the property itself. Against losses from all other causes the carrier is an insurer. For the prompt delivery of goods entrusted to its care for transportation it is held to the exercise of only ordinary care. *Railway Co. v. Levi,* 76 Tex. 337, 13 S. W. 191, 18 L. R. A. 323, 18 Am. St. Rep. 45. Inasmuch as it is undisputed that the loss of the cotton was occasioned by the storm of September 8, 1900, and as that catastrophe comes within the strictest definition of the act of God, it will serve to acquit the company of liability, unless it is made to appear that there is some casual connection recognized by law between the negligence of the company in failing to make timely delivery of the goods and their destruction by the storm, for we regard it as well settled that the doctrine of proximate cause is applicable to cases involving the loss of goods by a carrier, where responsibility must be predicated upon negligence of the carrier. [Citing cases.] What, then, is the true legal relation between the failure on the part of the company to make timely delivery of the cotton and its subsequent destruction by the storm? In

Rodgers v. Railway Co.

order to constitute proximate cause of an injury the injury must be the natural and probable result of the negligent act or omission. *Railway Co. v. Bigham*, 90 Tex. 223, 38 S. W. 162. In the course of the opinion in the case just cited Chief Justice Gaines says further: 'Since every event is the result of a natural law, we apprehend the meaning is that the injury is such as may probably happen as the natural consequence of the negligence under the ordinary operation of natural laws.' Again, he says: 'It would seem that there is neither a legal nor a moral obligation to guard against what cannot be foreseen.' In applying the principle to such a state of facts as is presented by the case before us the courts have with remarkable uniformity held that in a legal sense there is no causal connection between the act of negligence and the destruction by the act of God." (*International & G. N. R. Co. v. Bergman* [Tex. Civ. App.], 64 S. W. 999.)

"A common carrier, though guilty of negligent delay in transporting stock, is not liable for injury thereto inflicted by severe weather which overtook them in transit in consequence of the delay. The severe weather, and not the delay, is the proximate cause of the injury, and to this cause only does the law look. Severe weather is an act of God, for the consequences of which a common carrier is not liable." (*Herring v. Chesapeake & W. R. Co.*, 101 Va. 778, 45 S. E. 322.)

Cases are cited to the contrary, among which are the following: *Michaels v. N. Y. Central R. R. Co.*, 30 N. Y. 564, 86 Am. Dec. 415; *Read v. Spaulding*, 30 N. Y. 630, 86 Am. Dec. 426; *Wolf v. The American Express Co.*, 43 Mo. 421, 97 Am. Dec. 406. (See, however, *American Brewing Ass'n v. Talbot*, 141 Mo. 674, 42 S. W. 679, 64 Am. St. Rep. 538.) *Wald v. P., C., C. & St. L. R. R. Co.*, 162 Ill. 545, 44 N. E. 888, 35 L. R. A. 356, 53 Am. St. Rep. 332. (Merely adopts the New York rule.) *Cassilay, &c. v. Young & Co.*, 4 B. Mon. (Ky.) 265, 39 Am. Dec. 505. (No discussion of principles.) *Ala. Great Southern R. R. Co. v. Quarles & Couturie*, 145 Ala. 436, 40 South. 120. (Carrier's delay—destruction by cyclone.) *Bibb Broom Corn Co. v. Atchison, T. & S. F. Ry. Co.*, 94 Minn. 269, 102 N. W. 709, 69 L. R. A.

509; *Shoe Co. v. Railway Co.*, 130 Iowa, 123, 106 N. W. 498; *Wabash R. Co. v. Sharpe* (Neb.), 107 N. W. 758. (The last three are 1903 flood cases.)

In the case of *Michaels v. N. Y. Central R. R. Co.*, 30 N. Y. 564, 86 Am. Dec. 415, the opinion securing the adherence of the greater number of the members of the court was written by Mr. Justice Davies. His statement of principles is as follows:

"The law is well settled that common carriers, while engaged in the transportation of goods for hire, are not responsible for injuries to them caused by an act of God or the public enemy. With the exception of injuries thus caused, they are liable for all damage to goods entrusted to them, while under their care and control. For the reasons stated in the opinion in the case of *Read v. Spaulding*, decided at this term, the carrier, to exempt himself, must show that he was free from fault at the time the injury or damage happened. He must show that he was without fault himself, and that no act or neglect of his concurred in or contributed to the injury. If he has departed from the line of duty, and has violated his contract, and while thus in fault, and in consequence of that fault, the goods are injured by an act of God, which would not otherwise have produced the injury, then the carrier is not protected." (Page 578.)

The same judge delivered the opinion in *Read v. Spaulding*, which purports to be based upon authority. The case of *Davis v. Garrett*, 6 Bing. (Eng.) 716, is its chief prop. That case was one of deviation, a positive misfeasance, which makes the carrier liable as for conversion. (6 Cyc. 383; *Railway Co. v. Dunlap*, 71 Kan. 67, 80 Pac. 34.) Mr. Chief Justice Tindal bases his argument upon the proposition that the wrong of the master in taking the barge out of its proper course was undoubtedly a ground of action. The rule first appears in the law of marine insurance, and was adopted to meet the spirit of dangerous adventure on the part of sea-rovers which disregarded the safety of both property and life. Such a tort-feasor is held to take all risks, as if they were actually foreseen, and is not al-

lowed to apportion or qualify his wrong.  Mr. Justice
Deaderick, in *Lamont & Co. v. Nashville & Chatta-
nooga Railroad Company*, 9 Heisk. (Tenn.) 58, and Mr.
Freeman, in volume 36 of the American State Reports,
at page 839, have shown that none of the other cases
cited sustains the contention that delay in starting
goods to their destination will amount to such negli-
gence as will make the carrier liable for a loss oc-
casioned proximately by the act of God, and it is not
necessary to review them here.

The only other support for the New York doctrine
is that supplied by the academic method of settling the
whole controversy by a definition.  It is said to be
"agreed" that there can be no loss by act of God with-
out the total exclusion of all human agency.  If there
be any admixture of human means an injury cannot
be the act of God.  (Wright, J., in *Michaels v. N. Y.
Central R. R. Co.*, 30 N. Y. 571, 86 Am. Dec. 415.)
Therefore a carrier who in the course of tardy trans-
portation brings goods in the pathway of a Johnstown
flood or a San Francisco earthquake causes their de-
struction.  The event having an admixture of human
means is not the act of God.  This, of course, is like
playing with loaded dice.  It is always possible to get
the desired result in the conclusion of a syllogism if
the proper material be put into the premises.

One of the cases cited by Mr. Justice Wright is that
of *New Brunswick Steamboat Company v. Tiers et al.*,
24 N. J. Law, 697, 64 Am. Dec. 394, which reviews
others to which he refers.  A wharf which the de-
fendants were bound to keep safe was defective on ac-
count of a projecting timber.  A violent storm pro-
duced a very low tide and drove a vessel against the
timber, which pierced her side, causing her to fill and
sink, to the damage of her cargo.  It was held that the
defect in the wharf was the proximate cause of the
loss.  In the syllabus of the case and throughout the
opinion it is made plain that negligence on the part of
the carrier must be such as to constitute a proximate

cause of the loss in order to render him liable, and that
if the act of God be the proximate cause the carrier is
excused.  The following extract. shows the court's
view:

"The argument for the defendants in this case is
that inasmuch as if there had not been an unusually low
tide, produced by a violent storm of wind, the barge
would not have struck the timber, therefore the loss
must be attributed to the storm. ·But if that argument
was sound it would follow that, if an unseaworthy vessel
should founder in a storm, the fact that she might have
gone safe if the weather had remained fair would ex-
cuse the carrier.  This is not pretended to be the law.
If the vessel be in fact unfit for her business, a loss
arising from a storm is presumed to have been oc-
casioned by the defect of the vessel, because it is im-
possible to say how far the defect contributed to the
loss.  Upon the like principle, if the carrier's dock be
imperfect, a loss arising by the influence of a storm act-
ing upon the imperfection, and which would not have
happened in the absence of either cause, must be at-
tributed to the imperfection.  The loss is not by an act
of God alone; it is produced partly by an act for which
the carrier is responsible.  Had there been no storm,
but had the dock itself given way and sunk the vessel,
or had a projecting timber before unnoticed or be-
lieved not to be dangerous occasioned the injury, since
no act that could be called the act of God had intervened
it is undeniable that the carriers would be liable.  In
this case an act of God did intervene, and was instru-
mental in producing the loss; but it was not the sole
*or proximate cause of the loss.*"  (Page 702.)

No one will dispute the soundness of this argument.
It has been decided that if a carrier undertake to trans-
port freight in an unseaworthy ship it makes no differ-
ence that the storm which foundered it was of unusual
severity.  Hazard existed when the voyage began, and
it is not possible to determine the effect of the delin-
quency upon the final event.  (*Bell v. Reed,* 4 Binn.
[Pa.] 127, 5 Am. Dec. 398.)  If baggage be put off in
the rain without any protection it makes no difference
that the rainfall is unprecedented.  It is the carrier's
duty to protect property in its custody from exposure

to rain. (*Sonneborn v. Southern Railway,* 65 S. C. 502, 44 S. E. 77.) In all such cases, and in cases of actual deviation from the usual route, it is proper to say that an act of God must not combine with human instrumentality, that if a carrier depart from the line of duty he is liable, though an act of God intervene, and that he must be free from fault in order to claim his exemption. But to apply such statements to cases of mere delay in forwarding is to make the carrier liable, in the phrase of Mr. Chief Justice Gibson, for negligence in the abstract and not for the consequences of negligence. (*Hart v. Allen and Grant,* 2 Watts [Pa.], 114.).

In the decision just cited the same distinguished judge has shown that cases of this character are not within the reason or spirit of the rule holding common carriers liable as insurers, and hence that there is no excuse for not applying to them the doctrine of proximate cause:

"A carrier is answerable for the consequences of negligence, not the abstract existence of it. Where the goods have arrived safe no action lies against him for an intervening but inconsequential act of carelessness, nor can it be set up as a defense against payment of the freight; and for this plain reason: that the risk from it was all his own. Why, then, should it in any other case subject him to a loss which it did not contribute to produce, or give an advantage to one who was not prejudiced by it? It would require much to reconcile to any principle of policy or justice a measure of responsibility which would cast the burthen of the loss on a carrier whose wagon had been snatched away by a whirlwind in crossing a bridge, merely because it had not been furnished with a proper cover or tilt to protect the goods from the weather. Yet the omission to provide such a cover would be gross negligence, but, like that imputed to the carrier in the case before us, such as could have had no imaginable effect on the event. A carrier is an insurer against all losses without regard to degrees of negligence in the production of them, except such as have been caused by an act of providence or the common enemy; and why is he so? Undoubtedly to subserve the purposes, not of justice in

the particular instance, but of policy and convenience—
of policy, by removing from him all temptation to con-
federate with robbers or thieves, and of convenience,
by relieving the owner of the goods from the necessity
of proving actual negligence, which, the fact being pe-
culiarly within the knowledge of the carrier or his
servants, could seldom be done.    Jones, Bail. 108, 109;
2 Kent, 59, 78.    Such are the rule and reason of it, and
such is the exception.    But we should enlarge the rule,
or to speak more properly, narrow the exception far
beyond the exigencies of policy or convenience, did we
hold him an insurer against even the acts of providence
as a punishment for an abstract delinquency, where
there was no room for the existence of a confederacy
or the operation of actual negligence; and to carry a
responsibilty, founded in no principle of natural equity,
beyond the requirements of necessity, would be gra-
tuitous injustice."    (*Hart v. Allen and Grant*, 2 Watts
[Pa.], 114, 116.)

Of the recent cases holding the carrier liable, *Bibb
Broom Corn Co. v. Atchison, T. & S. F. Ry. Co.*, 94
Minn. 269, 102 N. W. 709, 69 L. R. A. 509, adds noth-
ing to the New York doctrine, unless it be by such
captious statements as that the exemption from lia-
bility of the carrier who is guilty of mere delay "is
based on too strict an application of the rule of proxi-
mate cause" (p. 275), and that the reasons for such
exemption "lose their force and persuasive powers
when applied to a carrier who violates his contract, and
by his unreasonable delay and procrastination is over-
taken by an overpowering cause, even though of a na-
ture not reasonably to be anticipated or foreseen."
(Page 275.)

The case of *Shoe Co. v. Railway Co.*, 130 Iowa, 123,
106 N. W. 498, contains the following remarkable
statement as a new contribution to the law:

"Now, while it is true that defendant could not have
anticipated this particular flood, and could not have
foreseen that its negligent delay in transportation
would subject the goods to such a danger, yet it is now
apparent that such delay did subject the goods to the
danger, and that but for the delay they would not have

Rodgers v. Railway Co.

been destroyed; and defendant should have foreseen, as any reasonable person could foresee, that the negligent delay would extend the time during which the goods would be liable in the hands of the carrier to be overtaken by some such casualty, and would therefore increase the peril that the goods should be thus lost to the shipper." (Page 129.)

This principle either makes the carrier responsible upon its hindsight rather than its foresight or makes it bound to regulate its conduct with reference to that which is utterly beyond mortal ken.

The commissioners' decision in the case of *Wabash R. Co. v. Sharpe* (Neb.), 107 N. W. 758, contents itself with citing without discussion the two cases in 30 N. Y., a dictum in *McClary v. The Sioux City and Pacific R. R. Co.,* 3 Neb. 44, 19 Am. Rep. 631, and *Lowe v. Moss,* 12 Ill. 477, which did not involve an act of God at all.

The Alabama case, *Ala. Great Southern R. R. Co. v. Quarles & Couturie,* 145 Ala. 436, 40 South. 120, sticks in the bark of the carrier's liability as an insurer, and ignores the justice and policy of disregarding all except the proximate cause.

The recent Missouri cases arising from the flood of 1903 all hold the carrier free from actionable fault. In *Grier v. Railroad,* 108 Mo. App. 565, 84 S. W. 158, after citing the leading cases in support of his view, Judge Goode says:

"In all those decisions it appeared the carrier had been guilty of some delay in moving the property, but for which it would not have been where the catastrophe occurred and therefore would have escaped injury. But as the catastrophe happened unexpectedly, and was not within the range of reasonable foresight, the negligent delay was not indulged while the carrier realized there was peril to the property and, therefore, did not participate, as a concurrent cause, in bringing about the loss. The doctrine of the cases cited on this point by the appellant is one that pervades the law of negligence; and by virtue of it a common carrier's neglect, like any other party's, must enter as a proximate cause

16—75 KAN.

into the happening of an injurious accident, to entail liability." (Page 570.)

In *Commission Co. v. Railroad Co.*, 113 Mo. App. 544, 88 S. W. 117, Judge Ellison discusses the question upon principle and in the light of the authorities. The following quotations from his opinion are pertinent:

"It might be negligence to delay putting certain goods under shelter in the month of July to protect them from rain or thieves; but if left out, and the unheard-of occurrence (in this climate) of a freeze at that season was to occur and destroy them, could there be any natural connection between the neglect and the loss? . . . If a train should for two hours be negligently delayed in leaving a station, and meantime a storm should arise and lightning strike a car and destroy property, the carrier would not be liable. The result would be beyond natural expectation, not within the thought or foresight of any one, altogether fortuitous and disconnected from the negligent act of delay.

"So, the rule may be stated to be this: the act of God must be the sole cause of the loss or injury; and whenever the negligence of the carrier mingles with the act of God as a cooperative cause, he is liable, provided the resulting loss is within the probable consequences of the negligent act; otherwise, it will be too remote and disconnected to be considered the proximate cause." (Pages 547, 548.)

In *Elam v. St. Louis & S. F. R. Co.* (Mo. App), 93 S. W. 851, Judge Johnston followed Judge Ellison, and said:

"In the exercise of reasonable care, of which negligence is the antonym, human foresight and prudence cannot foresee and guard against the sudden, unheralded, and overwhelmingly powerful outbursts of natural forces, and, because neither time, place nor destructive power of such visitations may be anticipated, people cannot be expected to act with reference to them; and, therefore, negligence which by chance places persons or property within their destructive reach should not be deemed a cooperative cause of injury." (Page 852.)

This court is of the opinion that the negligent delay of a carrier in moving goods entrusted to it for trans-

portation, not so unreasonable as to amount to a conversion, will not render it liable for the loss of such goods after they have been carried to their destination if they are there destroyed by an act of God before delivery.

The record recites that the facts of this case were all proved by uncontradicted testimony. There being no questions of credibility to be settled, and no conflicts of evidence to be resolved, the solution of the matter depended entirely upon the rule of law to be applied and the court properly instructed a verdict for the defendant.

The action was not founded upon sections 5982 and 5993 of the General Statutes of 1901. They merely give statutory damages for delay, and, if applicable to interstate shipments, do not govern the case made by the petition.

The judgment of the district court is affirmed.