O. M. PARKINSON, Appellant, v. PETER KORTUM.

Torts: REMOTE AND SPECULATIVE DAMAGES: EVIDENCE.   While it may be necessary to show that the injury resulting from a wrongful act was one that might have been reasonably anticipated, still there can be no recovery in the absence of proof that the injury resulted as a consequence of the wrongful act.   In this action involving a counterclaim by the husband for damages resulting from the claimed personal injury to his wife, the evidence that the injury complained of was the result of plaintiff's wrongful act

is held insufficient to authorize submission of the counterclaim to the jury.

**Landlord and tenant:** FRAUD: EVIDENCE. A tenant who has paid as rent a specified price per acre for a stated number of acres of land, as fixed by the terms of his lease, can not recover back any portion of the rent so paid on the ground that there was in fact a less number of acres, without showing that the lessor at the time of the execution of the lease fraudulently represented the quantity of land, that he relied thereon and that the representations were with intent to defraud him.

*Appeal from Lyon District Court.*—HON. WM. HUTCHINSON, Judge.

FRIDAY, JULY 8, 1910.

ACTION to recover damages for failure of defendant as plaintiff's tenant to deliver to plaintiff his proper share of the crops raised on the leased premises. By answer, the defendant interposed a denial of the allegations of the petition, and also two counterclaims, one for damages resulting from threats of personal injury to defendant's wife, causing premature delivery of a child and her insanity as a consequence, and the other for the recovery back of overpayments made by defendant to plaintiff on account of rent. On the trial to a jury of these and other issues not material on this appeal, there was a general verdict for defendant and from judgment on this verdict plaintiff appeals.—*Reversed.*

*E. C. Roach,* for appellant.

*S. D. Riniker,* for appellee.

McCLAIN, J.—There was evidence tending to sustain plaintiff's claim that defendant had not delivered one-half the corn crop raised on the leased premises by defendant during the year 1908, as required by the lease, and as,

under the instructions, the jury might have returned a general verdict for defendant under a finding that the damages suffered by defendant under one or the other of his counterclaims was equal to the damage suffered by plaintiff in being deprived of his proper share of the corn crop, it is necessary to determine whether the two counterclaims above described were properly submitted to the jury.

I.   The counterclaim relating to injury to plaintiff's wife, depriving him of her companionship and help, was not predicated upon actual, physical injury directly resulting in permanent or temporary disability, but on fright and shock occasioned by threats and physical violence which produced a premature delivery of a child, in consequence of which defendant's wife became partially insane, and thereby incapable of caring for her children and affording companionship to her husband.   The contention of plaintiff on the trial was that the alleged damages of this character were too remote and speculative, and not the proximate result of the acts of the plaintiff from which the alleged damage accrued, and that there was no evidence justifying the submission of this counterclaim to the jury.

1. TORTS: remote and speculative damages: evidence.

The testimony relied on for appellee tended to show that on one occasion when a man by the name of De Vaul was assisting the plaintiff in taking away some planks from the dooryard of the house on the leased premises occupied by defendant's family, defendant's wife came out of the house, requested De Vaul not to carry away a certain plank, and took hold of one end of it for the purpose of assisting him in putting it back where it had been used to walk on, and that thereupon plaintiff, who was near by, came toward defendant's wife in a threatening attitude, saying that he wanted the plank, and taking hold of it, gave it a twist so as to bump against the woman's side, at the same time slipping and falling so that his face was cut on nails which were in the plank.   Defendant's wife

did not at this time manifest any pain or suffering as the result of violence, and continued for some minutes in conversation with De Vaul after plaintiff had withdrawn from the scene. But according to the testimony of her children who were present, she soon after went into the house and commenced to act in an hysterical manner, laughing and crying alternately, and continued to show hysteria at intervals until ten days afterward, when she was delivered of a child which lived but a few hours.

This was in October, and she continued to show symptoms of mental disturbance until January, when a physician was called to examine her, and found her to be suffering from a derangement which continued until the trial. In the meantime the defendant had removed his family to a farm in South Dakota. He had not placed his wife in an asylum, but she continued to carry on her household work, though with greatly impaired efficiency. The doctor who attended at the confinement, making two visits, did not discover any signs of mental derangement, and his attention was not called to any peculiarities of conduct on the part of the wife, but both he and another physician, examined as experts, testified that the derangement might have been due to the excitement produced by the controversy with plaintiff and the impact of the plank against the woman's side or abdomen, causing a premature delivery.

It is not contended for appellee that the wife's mental derangement was the direct or immediate result of fright, shock or physical injury occasioned by the acts of appellant. There is some evidence that she became somewhat hysterical, and that her mind dwelt upon the wrong and indignity done her, as she conceived, by him. But there is no evidence that if the birth and subsequent death of her child had not intervened, this condition of excitement and hysteria would have developed into insanity. The argument of appellee is necessarily predicated upon the assumption that the jury might have found the birth of the

child to have been premature, and that this premature birth caused or contributed to the insanity which followed.

Now there is no evidence whatever which the jury could properly have considered tending to show that the delivery of the child was premature, or otherwise unnatural, in consequence of any act of appellant, or hysterical condition which may have followed it. The doctor who attended the delivery testified that to all appearances it was in the ordinary course of nature. There is some evidence that the child was not robust, but none whatever that its condition could be reasonably attributed to any injury to the wife, or any condtion that resulted from appellant's act. Indeed, there is no evidence whatever that the delivery was premature. The only testimony relied upon for appellee as to this fact is that of a woman who attended the wife that the wife said she was afraid she was going to be sick, and "she wasn't looking to be sick for another month." Counsel for plaintiff moved that this answer be stricken out because hearsay. Although exception was taken to this ruling, and it is formally assigned as error, yet this particular assignment has not been pressed in argument. Nevertheless, it was for the court below to determine whether there was any proper evidence on which the jury could find a premature delivery, and as we think there was no such evidence, we hold it to have been error in the trial judge to assume in his instructions to the jury that it might be found from the evidence that there was an abortion and insanity resulting therefrom.

The doctors testifying for defendant as experts on cross-examination admitted that the derangement might have been due to various other causes, such as pregnancy, or mental disturbance following the birth of the child, or to the woman's approaching change of life, as she was forty-two years of age when the child was delivered. We may concede, as counsel contend, that it is not necessary

to show the injury actually resulting from a tort, which consists in an affirmative act of wrong and not merely in negligence, to have been one which might reasonably have been anticipated. *Anderson v. Schurke,* 121 Iowa, 340; *Cowan v. Western U. Tel. Co.* 122 Iowa, 379; *Black v. Minneapolis & St. L. R. Co.,* 122 Iowa, 32; *Green-Wheeler Shoe Co. v. Chicago, R. I. & P. Co.,* 130 Iowa, 123; *Lapleine v. Morgan's L. & T. R. & S. Co.,* 40 La. Ann. 661 (4 South. 875, 1 L. R. A. 378); *Rodgers v. Missouri P. R. Co.,* 75 Kan. 222 (88 Pac. 885, 10 L. R. A. (N. S.) 658, 121 Am. St. Rep. 416); *Cole v. German Sav. & L. Soc.,* 124 Fed. 113 (59 C. C. A. 593, 63 L. R. A. 416). But as there is no evidence that insanity resulted immediately as the consequence of appellant's wrongful act, or that there was a premature delivery resulting from such act which may have tended to produce insanity, we reach the conclusion that this counterclaim was improperly submitted to the jury.

II. The counterclaim based on overpayment of rent was predicated upon the following state of facts which the evidence tended to establish. The lease provided that in addition to a share in the crop, the plaintiff should have a cash rent of three dollars per acre for all grass and hay land, and contained a provision that "if any breaking is done, party of the second part (the defendant) must seed down corresponding number of acres to grass. Amount of grass is now one hundred and seventy-six acres." The defendant paid cash rent on this basis for four years, but after the controversy between him and the plaintiff resulting in this lawsuit had arisen, he caused the hay and grass land which consisted principally of an irregular tract of slough land extending entirely through the farm to be surveyed, and found that it contained only one hundred and sixty-three acres.

The counterclaim is based on fraud and misrepresenta-

*2. LANDLORD AND TENANT: fraud: evidence.*

tion of the plaintiff as to the acreage of the grass and hay land. No other representation than that contained in the portion of the lease above quoted appears to have been made, and there is no evidence whatever that this representation was known or supposed by the plaintiff to be false, and there is an entire absence of any showing on which an action for deceit could be predicated. *Holmes v. Clark,* 10 Iowa, 423; *Boddy v. Henry,* 113 Iowa, 462; *Boddy v. Henry,* 126 Iowa, 31. The cases relied upon by appellee are those in which there was evidence tending to show that the representation was, to the knowledge of the person making it, false.

The court instructed the jury specifically that no recovery should be allowed defendant on this counterclaim, unless they were satisfied by the preponderance of the evidence that at the time the lease was made the plaintiff knowingly, purposely and fraudulently represented to defendant that there were one hundred and seventy-six acres of grass and hay land, whereas, in truth and fact, there were only one hundred and sixty-three acres thereof, and that defendant relied upon the statements so made by plaintiff, and that they were false and fraudulent, and made with intent of deceiving and defrauding defendant. We think this instruction correct, but we find no evidence in the record to sustain the burden thus imposed on the defendant.

For the errors pointed out, the judgment is *reversed.*